McMASTER, Appellant, vs. SCRIVEN, Executor, Respondent.

*April 15 — May 2, 1893.*

WILLS.   (1) *Attorney as witness.*   (2) *Testamentary capacity: Evidence.*
(3) *Undue influence: Burden of proof.*

1. Where an attorney at law who drew a will also signed it as a wit-
   ness at the request of the testatrix, he may testify as to any matters
   in relation to the will or its execution of which he acquired knowl-
   edge by virtue of his professional relation.
2. The evidence in this case is *held* to sustain a finding in favor of the
   competency of the testatrix, a widow sixty-three years of age, al-
   though she had for some time been very sick and had suffered ex-
   cruciating pains which had reduced her physical and mental vigor.
3. The testatrix, a childless widow, after giving about half of her es-
   tate of $15,000 to thirteen legatees, including sisters, nephews,
   nieces, and friends, gave the residue to a nephew and niece who
   had lived with her and cared for her during her illness.   There was
   nothing to show that the will was not the free, uninfluenced result
   of her deliberate and intelligent judgment.   *Held*, that the resid-
   uary legatees had not, merely by reason of having occupied her
   house and cared for her, stood in any fiduciary relation to the tes-

McMaster vs. Scriven.

tatrix, so as to impose upon them the burden of showing that there had been no fraud or undue influence; nor did their opportunity to exercise undue influence over the testatrix, coupled with the liberal provision in their favor, raise a presumption that the will was the result of such influence.

APPEAL from the Circuit Court for *Rock* County.

This is an appeal from the judgment of the circuit court affirming the order of the county court for Rock county admitting to probate an instrument propounded as the last will of Susan R. Pitt, deceased, made August 3, 1891. She died on the 10th day of the same month. The validity of her will was contested by *A. H. McMaster*, one of her heirs at law, on the ground of want of testamentary capacity of the testatrix; that it was not executed by her, if at all, with full knowledge of its provisions; and that it was made and obtained through fraud and undue influence on the deceased, practiced by *Emmett Scriven* and Hattie Scriven and others. The county court, after a hearing, admitted the instrument propounded to probate as the last will and testament of the deceased, and the circuit court, after a full hearing, found in its favor.

The testatrix was a widow, aged sixty-three years, and had been in feeble health for many months prior to her death, and for the last two months was confined to her bed, and died from the effects of a cancer. She left no child or children nor any descendant of such surviving her. Her heirs at law were two sisters, one residing in Vermont and the other in New York, and several children of a deceased brother and of two deceased sisters. Of these the Mc-Master family would have taken one fifth of the estate, and the proponent, *Emmett Scriven*, his mother, Ellen Scriven, his wife, Hattie Scriven, and his sister, Susie Scriven, for each of whom provision is made by her will, would have taken no part of the estate. Her estate was of the value of $15,000, consisting of a farm of 128 acres of land,

a house and a lot and one half of land in Beloit, and certain personal estate. She gave her niece, Ellen Scriven, $1,000, to her niece Susie Scriven $500 and her homestead in Beloit, Wis., and to her sister, Mrs. R. C. Peck, $500, and to her sisters, Diana Chase and Dorcas Wilson, $500, to be divided between them according to the judgment of her executor; to her nephews, Hugh and Warren McMaster, $1,000 each, to her nephews, Frank and Fred Peckham, $500 each, and to Mrs. David Amita, Mrs. P. E. Favor, and Mrs. J. E. Vette, $500 each; to her physician, Dr. Thompson, and to her friend, Mrs. Austin Gibbs, $100 each; and to the First Baptist Church of Beloit $500 to purchase a pipe organ costing $1,000, if bought within one year after her death; and all the rest of her estate, after paying said legacies, to her nephew and niece, *Mr. Emmett Scriven* and Mrs. Emmett (Hattie) Scriven. It will be seen that *Mr.* and Mrs. Emmett Scriven would take under this will somewhat more than one half of the entire estate.

Mr. and Mrs. Haynes had resided with the testatrix in her homestead in Beloit for about seventeen months, occupying part of the house, and the rest was reserved for her; and in March, 1891, the contract for such occupancy had been renewed for another year, she having expressed herself as being satisfied that they should remain that length of time. About two weeks prior to July 20th of that year, without assigning any reason, the testatrix said to Mrs. Haynes: "I feel as though I ought to tell you that we are going to take steps to put you out of here," and that she had put it in the hands of *Emmett Scriven* to get the Haynes family out. She had a short time before offered them $50 to move out, and Mrs. H. wanted more, and she told Mrs. Haynes, "If you get any more out of me than I have offered it will be at the end of a law suit." *Emmett Scriven* then saw Mr. Haynes about the matter, and he wanted $150, and it was agreed between Haynes and Wickhem, *Scriven's* at-

McMaster vs. Scriven.

torney, that Haynes should have $150, when the latter claimed that the testatrix owed him $25 for board, and he wanted that in addition; and that Wickhem saw *Scriven* about it, when the latter said that he would pay the $25 if he had to pay it out of his own pocket. The Haynes family moved out July 20th, and *Emmett Scriven* and family, consisting of himself and wife, Hattie, his mother, Ellen Scriven, and his sister, Susie Scriven, moved in.

The paper propounded as such last will was drawn by J. G. Wickhem, an attorney, and attested by him and Dr. C. W. Merriman. At the time of executing it, and for a considerable space of time prior thereto, the testatrix had been a very sick woman, and she suffered constant pain, and was subject to paroxysms, which were very excruciating. At the date of the will she was prostrated in bed; and the attorney who drew the will, and who was called for that purpose by *Emmett Scriven*, visited her three times in order to complete it, the last visit being August 3d, at which time she signed it, raised in her bed and bolstered up with pillows. The will was taken away by Dr. Merriman and kept by him until the day of her death, when it was given to *Emmett Scriven* and by him taken to Janesville and deposited for probate with the county judge. The only declaration shown to have been made by the testatrix as to her intended disposition of her property was that made some considerable time previous, when, in speaking of her relatives, she said she supposed they would all get a slice of her estate. There is no testimony whatever to show that any conversation had been had with her with reference to a plan or scheme of the will, or any particular disposition of her estate, prior to her instructions given to Mr. Wickhem in regard to its preparation. It does not appear that she was solicited by any one to make any disposition in favor of any particular person. Mr. Wickhem testifies to three visits

McMaster vs. Scriven.

to her in obtaining her views and instructions, and that it was read over twice to her before it was executed. He testified fully as to the execution of the will, and as to what took place between him and the testatrix. Objection was made to his testimony on the ground that he was not a competent witness to testify to what took place between him and his client, the testatrix, but the court overruled the objection. The proof of the formal execution of the will was full and complete.

The more important testimony in relation to the competency of the testatrix was by Mr. Wickhem, Dr. Merriman, and the Reverend Mr. Bestor, her pastor, who called on her to see her several times, and it showed that she was entirely competent to make the will. There was considerable other testimony on the subject of competency, and several witnesses who had seen her expressed the opinion that she was not competent, but did not testify to facts and circumstances sufficient to justify such conclusion. The testimony all showed that she suffered a great deal of pain, but there is no proof to show that her utterances were incoherent or irrational. She had a dread of the pain and suffering that she must undergo before death might come to her relief. She would look at times deathly, and her eyes would be closed. She had the exhaustion, mental and physical, that is the result of protracted suffering.

After the will had been made, and before her death, *Emmett Scriven* showed Hugh McMaster a statement of the provisions of the will, but it did not contain the residuary clause, or the provision disposing of her homestead to Hattie Scriven, his wife. The will was delivered, after its execution, to Dr. Merriman, who kept the same until the day the testatrix died, when it was delivered to *Emmett Scriven*, and by him taken to Janesville. The testimony on the subject of the competency of the testatrix took quite a

McMaster vs. Scriven.

wide range, and it is not only impracticable, but would be unprofitable, to state the facts more in detail.    Other facts will be referred to in the opinion.

For the appellant there was a brief by *Orton & Hughes*, attorneys, and *O'Brien & O'Brien*, of counsel, and oral argument by *O. H. Orton* and *G. D. O'Brien*.    They contended, *inter alia*, that since the proponent is one of the chief beneficiaries under the alleged will, and considering his relations with the testatrix, his active participation in procuring the execution of the will, and the ample opportunities which he and his family had to exercise an undue influence over the testatrix in her weak and enfeebled condition, the burden was upon him to show affirmatively that the alleged will was not procured as the result of undue influence.    *Will of Slinger*, 72 Wis. 35; *Gay v. Gillilan*, 92 Mo. 250; 1 Redf. Wills, 515, 516, 537; *Matter of Budlong*, 18 Civ. Proc. Rep. (N. Y.), 18; *Lynch v. Clements*, 24 N. J. Eq. 431; *Daniel v. Hill*, 52 Ala. 430; *Moore v. Spier*, 80 id. 129; *Jones v. Roberts*, 37 Mo. App. 163; *Herster v. Herster*, 116 Pa. St. 612; *Shipman v. Furniss*, 69 Ala. 555; *Garvin's Adm'r v. Williams*, 44 Mo. 465; *Delafield v. Parish*, 25 N. Y. 36; *Tyler v. Gardiner*, 35 id. 585; *McLaughlin v. McDevitt*, 63 id. 213; 1 Jarman, Wills, 69; *Wilson v. Mitchell*, 101 Pa. St. 505; *Rollwagen v. Rollwagen*, 63 N. Y. 504; *Cuthbertson's App.* 97 Pa. St. 163; *Davis v. Dean*, 66 Wis. 100.

For the respondent there was a brief by *J. G. Wickhem* and *Winans & Hyzer*, and oral argument by *Mr. Wickhem* and *E. M. Hyzer*.

PINNEY, J.    1. The objection made to the reception in evidence of the instructions given by the testatrix to Mr. Wickhem, the attorney who prepared her will, and what took place between them on the subject of the will, is founded on the statute (sec. 4076, R. S.), which provides

that " an attorney or counsellor shall not be allowed to dis-
close a communication made by his client to him, or his
advice given thereon, in the course of his professional em-
ployment." The testatrix requested Mr. Wickhem to sign
the will which was the result of the communications be-
tween them, as a subscribing witness, and he signed it ac-
cordingly. This must be held to be a waiver of objection
to his competency, so as to leave the witness free to per-
form the duties of the position, and to testify to any mat-
ter in relation to the will and its execution of which he
acquired knowledge by virtue of his professional relation,
including the mental condition of the testatrix at the time.
*In re Will of Coleman*, 111 N. Y. 220; *Alberti v. N. Y.,
L. E. & W. R. Co.* 118 N. Y. 85. Some other objections
were made to rulings upon questions of evidence, but none
of them possess sufficient significance to require special no-
tice.

2. Upon the question of the testamentary competency of
the testatrix the evidence, in our opinion, preponderates
decidedly in favor of the proponent. There is no doubt
she was racked and tortured with pain which it was ex-
tremely difficult to endure, and which had reduced her
physical and mental vigor, but there is no evidence that her
mind wandered in the least, or that her utterances were
at any time in the least incoherent or irrational, or that
she labored under any mental delusion whatever. On the
contrary, all that she is shown to have said or done at the
time and for a month or more before the execution of the
will indicates that, though at times irritable and excitable,
yet her mental faculties and her capacity to understand the
situation and extent of her property and to remember all
who had natural claims on her bounty, and her ability to
judge of the situation and act intelligently in respect to it,
still remained sufficiently clear and strong. The scheme of
the will shows that it was a matter to which she must have

given considerable thought, and although *Emmett Scriven* and Hattie, his wife, take under the will half, at least, of her estate, it is to be remembered that they came to her aid and support in her last illness, and that very many others of her kindred lived in other states, and some at a great distance. She had a right to make the discrimination in this respect she did, and, though it was argued that this fact and others already mentioned subject the will to some suspicion as to whether it was procured by undue influence, yet this fact alone in its bearing on the question of her mental competency is of little significance. If the testatrix was deficient in testamentary capacity, or the will was the result of undue influence on the part of the Scriven family, it is not reasonable, under the circumstances, to suppose that about one half of the entire estate would have been given to thirteen other legatees. Quite a number of witnesses, particularly on the part of the proponent, expressed opinions unfavorable to her testamentary capacity, but the facts they state to justify their conclusions are few, and do not throw much light on the question. Mere opinion, without substantial grounds to justify it, is of comparatively little value. Several other witnesses, and among them her attending physician and Mr. Wickhem, who drew the will, give quite clear and convincing testimony showing that she was fully competent to make a testamentary disposition of her property at the time she executed this will. We cannot say, under all the circumstances, that the will is open to objection as being a grossly unreasonable one. The test of testamentary capacity acted on in *Delafield v. Parish,* 25 N. Y. 9, has been adopted in this state, and applied in numerous cases, that " it is essential that the testator has sufficient capacity to comprehend perfectly the condition of his property, his relations to the persons who were or should or might have been the objects of his bounty, and the scope and bearing of his will. He must

McMaster vs. Scriven.

have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and to be able to form some rational judgment concerning them." *In re Lewis' Will*, 51 Wis. 104, and cases there cited; *Will of Patrick Carroll*, 50 Wis. 437; *Will of Smith*, 52 Wis. 552; *In re Will of Blakely*, 48 Wis. 294. One error occurred in drafting the will in stating the relationship of one of the legatees to the testatrix, but this was corrected at her suggestion, and it is said that Mrs. R. C. Peck, a sister of the deceased, and so described in the will, to whom $500 was given by it, was dead at the date of the will. The evidence is not entirely clear on the question, but, if so, there is nothing to show that she knew of the death of this sister when she made the will. These facts do not tend to show a want of testamentary capacity. As the circuit court heard the witnesses testify, and had opportunities for judging of their intelligence, fairness, and candor which we do not possess, we do not feel that we could interfere with the finding of that court unless we are able to say that there is quite a preponderance of evidence against its conclusion. For reasons already stated, we think the evidence sustains the finding of the circuit court.

3. It was argued that, in consequence of the relations of *Emmett Scriven* and his wife to the testatrix, the burden of vindicating the will against the imputation that it was procured by fraud and undue influence was on them. They occupied her house, and were caring for her and nursing her in her illness, but we do not understand that by reason of these facts they stood in any fiduciary relation to the testatrix, within the meaning of the rule invoked by appellants, which would impose upon them the burden of showing an absence of fraud or undue influence in a will made by the testatrix containing substantial provisions in their

favor. Ordinarily, the proponent of a will "is not called upon to show affirmatively that there was no undue influence used to procure the making of the will. Undue influence is a defense, and the evidence of it must regularly come from the contestant." *Tyler v. Gardiner*, 35 N. Y. 559; *Boyse v. Rossborough*, 6 H. L. Cas. 2; *Clapp v. Fullerton*, 34 N. Y. 192.

In *Boyse v. Rossborough, supra*, the Lord Chancellor says: "One point, however, is beyond dispute, and that is that when once it has been proved that a will has been executed with due solemnities by a person of competent understanding and apparently a free agent, the burden of proving that it was executed under undue influence is on the party who alleges it. Undue influence cannot be presumed." And this language is cited with approval and was acted on in *Armstrong v. Armstrong*, 63 Wis. 169. In the *Jackman Will Case*, 26 Wis. 111, it was said that undue influence "cannot be presumed from conjecture or suspicion without reasonable and satisfactory proof of facts establishing the contrivance and undue influence. . . . It must be such an influence as to destroy the freedom of the testator's will, and thus render his act obviously more the offspring of the will of others than of his own. It must be an influence especially directed towards the object of procuring a will in favor of particular parties. . . . It must be such as was intended to mislead him to the extent of making a will essentially contrary to his duty; and it must have proved successful to some extent, certainly," and "must be such as in some degree to destroy the free agency of the testator, and constrain him to do not only what is against his will, but what he is unable to refuse or too weak to resist." There must be proof that the act was obtained by importunity which could not be resisted; that it was done merely for the sake of peace, so that the motive was tantamount to force and fear.

McMaster vs. Scriven.

In this case it is contended that *Scriven* and his wife had the opportunity to exercise undue influence over the testatrix; that they had the temptation to exercise it; and because of the liberal provisions in the will in their favor it is to be presumed that it was the result of such influence acting on the mind of the testatrix, and this presumption must prevail unless rebutted. It may be conceded that there are circumstances in this case which beget suspicion, but the judgment of the court cannot go upon mere suspicion. The special circumstances in *Davis v. Dean*, 66 Wis. 108, 110, and *Will of Slinger*, 72 Wis. 27-33, clearly distinguished those cases from the present, and, like the case of *Tyler v. Gardiner*, 35 N. Y. 559, show under what circumstances the burden of proof will be placed on the claimant under the will to show that the will was not the result of undue influence. It was there held that, "when it appears from the proof that the will was made by a testatrix on her death-bed; that her faculties were enfeebled by long and wasting disease; that she had been for a considerable period under the active and controlling influence of the principal beneficiary; that during this period she had been imbued with causeless antipathy to her only son, and had been induced to expel him from her house and to pursue him with unmerited accusations; that the will originated with the chief beneficiary, who framed the written instructions, engaged the counsel, and superintended its execution; that it involved a complete revolution of intention and an entire departure from previous testamentary dispositions; that it was made under mistaken impressions of fact, recently imbibed and vitally affecting its provisions; these facts, coupled with gross inequality and apparent injustice, raise a presumption of undue influence, and cast the burden of proof of repelling it upon the party to whom it is imputed."

These cases have but a few features in common with the

McMaster vs. Scriven.

present case. There is nothing whatever to show that the *Scriven* family had any control or influence over the testatrix, or that they had tried to imbue her with prejudice against any of her relatives, or that the will originated with them or either of them, or that they even knew what its provisions were, or were proposed to be, until after it was executed. The only thing that is shown is that *Scriven* employed for the testatrix Mr. Wickhem to prepare the will, but it does not appear that any member of the family was present when any of the instructions for it were given, much less that they, or either of them, made any suggestion as to its provisions, or any request of the testatrix. In short, there is nothing whatever showing or tending to show that all the provisions of the will were not the free, uninfluenced result of the deliberate and intelligent judgment of the testatrix. The facts shown by the contestant did not, in our judgment, change the burden of proof on the subject of undue influence, or establish it by a preponderance of evidence against that produced by the proponent. On this point, as well as on that of testamentary capacity, we think the evidence does not warrant a reversal of the findings of the circuit court.

The contest was originated and prosecuted in good faith by the contestant, and, in accordance with the settled rule of the court, he is to be allowed his taxable costs of the litigation to be paid out of the estate. The judgment of the circuit court must be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed, the appellant's taxable costs to be paid out of the estate of the testatrix.