C. J. MARSHALL, Proponent, Appellant, v. JOSIAH HANBY et al., Contestants.

Wills: UNDUE INFLUENCE: *Burden of proof.* Testatrix was hard of hearing, defective of eyesight, and so crippled as to have difficulty in getting about. Whether she had been growing weaker mentally was disputed. She was not sick when the will was signed. She lived with her youngest daughter, who was sole legatee, but she was not wholly dependent for care on this daughter. *Held,* that the circumstance of the case were not sufficient to cast on the daughter the burden of showing the absence of undue influence.

EVIDENCE: *Conclusions of expert.* On the trial of an issue as to the sanity of testatrix at the time of making her will, a question asked an expert—whether, under the circumstances shown, she would have mental capacity, such that she could know an intelligent disposition of her propery, and make an intelligent disposition of it,—is incompetent, since it calls for an opinion on the ultimate issue to be passed on by the jury.

CROSS-EXAMINATION. Where, on a will contest, undue influence on the part of proponent is claimed, and a witness has testified that proponent had the influence to make deceased do whatever she said, and always had from the time she knew anything, a

question calling on the witness to give the source of her information, and the facts on which she based such testimony, is material, and should have been allowed.

*Appeal from Warren District Court.*—HON. A. W. WILKINSON, Judge.

WEDNESDAY, JANUARY 22, 1902.

PROPONENT appeals from a judgment setting the will of Elizabeth Hanby, deceased, aside.—*Reversed.*

*O. C. Brown* for appellant.

*Henderson & Berry* for appellees.

LADD, C. J.—Elizabeth Hanby was 83 years old at the time of her death, July 24, 1899, and had been making her home with the proponent since February, 1898. The paper purporting to be her will was signed March 29, 1899, and devised her undivided one-third interest in 180 acres of land to her youngest daughter, the proponent. The contestants (two daughters and a son of the deceased) object to the paper being probated as her will on two grounds,—want of testamentary capacity, and because procured by undue influence. On the trial, Thomas Parr, a physician of 30 year's experience, testified to having treated deceased in 1892, and also four years later. He was asked to state from his own knowledge as disclosed, and other facts, hypothetically stated, which the evidence tended to establish: "What would you say to the competency of that person to intelligently manage her property and make a disposition of it, and determine what way and how it should be devised? In other words, would she have mental capacity, such as that she could know an intelligent disposition of her property?" Over the objection that this was incompetent, the witness answered: "Assuming this condition to be a fact, I would infer that the person was not

competent to make any disposition of her property, because of her absolutely contradictory conditions; and, if they are all facts,—assuming them to be facts,—she is not competent to make a disposition of her property." We have set the answer out, as it illustrates the particular vice of such a question; i. e., it calls for an opinion on the ultimate issue to be passed upon by the jury. *Pelamourges v. Clark,* 9 Iowa, 1; *Furlong v. Carraher,* 108 Iowa, 492. The last case is precisely in point. It is not for a witness, though an expert, to say what will constitute capacity. That is a question of law for the court, and when advised the jurors are to say whether, in view of all the evidence, it was possessed by the deceased at the time the will was signed. The opinion of the expert must be limited to the estimate of the mental condition of the person concerning whom inquiry is made, and never allowed to be given as to the effect of that condition upon the particular transaction being investigated. A like objection to a similiar question propounded to a non-expert, Ash, was also erroneously overruled.

II. The deposition of Mary E. Lyon was taken, and in response to a direct interrogatory she testified that proponent "had the influence to make her [deceased] do whatever she said, and always had from the time she knew anything." On cross-examination she was asked: "If you answer that Mrs. Marshall had influence over your mother, you may give the source of your information, and give the facts upon which you base your answer." The proponent's objection that this was immaterial was sustained by the court, and then withdrawn. Contestant's counsel thereupon remarked, "Then I object to it," and the court said, "It is immaterial." Assuming that contestants' counsel intended to interpose the same objection, we cannot concur with the conclusion that the inquiry was immaterial. The extent and character of proponent's influence over deceased was important in determining how

the will was procured. The explanation that this resulted from love and affection for her daughter would tend to rebut the notion that such influence was improperly exerted. If she was, as the witness declared, "a petted and spoiled child, —the mother always making one give up to her, and shielding her, whether right or wrong,"—this went far toward explaining her influence, and tended to furnish a reason for preferring her to others in the will.

III. The following portion of the twenty-first instruction is criticised: " And in this case, if you believe from a preponderance of the evidence that the said Elizabeth Hanby, deceased, was, at the time of the acts complained of, old and infirm, diseased in body and weak in mind, and that she was easily influenced and imposed upon, and that she was at the time living with her daughter Cyrena J. Marshall, and that the facts and circumstances proven justify the inference or presumption that the alleged will was not the free act of the said testatrix, and that the said Cyrena J. Marshall, or her husband, were actually instrumental in the dictation and procurement of the execution thereof, and that the said Elizabeth Hanby, deceased, would not have executed said instrument but for the coercion and undue influence of said parties, this would cast the burden upon the proponent to establish by a preponderance of the evidence that the said instrument, in all its terms and provisions, was the free and voluntary act of the said Elizabeth, Hanby deceased, without undue influence of coercion on the part of proponent or members of her family. And in such case, before the instrument in controversy can be upheld, it is incumbent upon the proponent to establish that it was executed voluntarily by the said Elizabeth Hanby, deceased, without the same having been procured by any undue influence or coercion on the part of the parties charged with such undue influence." Though there is much diversity of opinion as to which of the parties in such a case has the burden of

proof, this has been definitely settled in Iowa. In *Stephenson v. Stephenson,* 62 Iowa, 163, the burden was held to be upon contestants to establish testator's mental incapacity at the time of making his will, and the refusal of an instruction that, "if testimony has been shown in this case which counterbalances that presumption [of sanity], then the burden is upon the proponents to establish by the weight or preponderance of the evidence that the testator was of sound mind when he executed the will," was expressly approved. The burden is likewise on the contestant to prove that the will was the result of undue influence. *Webber v. Sullivan,* 58 Iowa, 260; *Denning v. Butcher,* 91 Iowa, 425. That there are exceptions was recognized in the last case, and these will be found enumerated *in extenso* in notes to *In re Hess' Will,* 48 Minn. 504 (31 Am. St. Rep. 681 s. c. 51 N. W. Rep. 614), and *Richmond's Appeal,* 59 Conn. 226 (21 Am. St. Rep. 94 s. c. 22 Atl. Rep. 82). But the facts of this case do not bring it within any of the exceptions. True, the testatrix was being cared for by the proponent, her daughter, was hard of hearing, with eyesight not very good, and so crippled as to have difficulty in getting about. But she was not wholly dependent for care on this daughter, and it was not unnatural that she should make her home with her. Nor were provisions of the will leaving this small property entirely to her youngest child, to whom she was greatly attached, such as to justly excite suspicion. She was not sick when the will was signed. Whether she had been growing weaker mentally was in dispute. Undoubtedly her condition and situation were subjects proper to take into consideration in determining whether the will was her free act. But the facts shown did not warrant the presumption that the will had been procured by fraud. There appears to be no reason for applying a different rule with respect to the shifting of the burden of proof than was held to obtain in *Stephenson v. Stephenson.* If it continues throughout the trial upon the contestants on the issue of mental incapac-

ity, it should also when undue influence is alleged, save when, because of the peculiar relations between the testator and beneficiary, it is incumbent on the latter to explain. As directly in point, see *Baldwin v. Parker,* 99 Mass. 79 (96 Am. Dec. 697); *McMaster v. Scriven,* 85 Wis. 162 (55 N. W. Rep. 149, 39 Am. St. Rep. 828); also cases collected in notes to *Prentis v. Bates,* 93 Mich. 234 (17 L. R. A. 494 s. c. 53 N. W. Rep. 153). Contra, *Sheehan v. Kearney,* — Miss. — (21 South. Rep. 41, 35 L. R. A. 102). The presumption that the paper purporting to be a will, when signed as directed by statute, is such will, is but an inference in its favor, and enough merely to cast the burden upon contestants, in asserting its invalidity, to prove it not the result of testator's free agency. To shift the burden as was proposed in *Stepenson v. Stephenson,* and according to the above instruction, would give undue weight to such a presumption, and tend only to confuse, rather than aid, the jury.

IV. It will be enough to say, without setting out the evidence, that it was sufficient to carry the case to the jury on both issues.

Because of the errors pointed out, the judgment must be REVERSED.