BOYLE and another, Appellants, vs. ROBINSON, Respondent.

*October 12—November 7, 1906.*

*Deeds: Competency of grantor: Undue influence: Evidence: Burden of proof: Judgment: Witnesses: Attorneys at law: Physicians: Appeal: Immaterial error.*

1. In an action to set aside a deed and a transfer of personalty by an aged woman to a daughter to the exclusion of her children by a former husband, the evidence (sufficiently stated in the opinion) is *held* to sustain findings of the trial court that the grantor was mentally competent and that there was no undue influence.

2. Plaintiffs' evidence in such case is *held* not to have constituted such a *prima facie* showing of fraud or undue influence as to have put the burden of proof upon the defendant.

3. In an action to set aside a deed from a mother to a daughter, where a part of the consideration was a promise by the grantee to pay certain sums to plaintiffs, who were also children of the grantor, a judgment establishing the validity of the deed and

directing payment of the agreed sums to plaintiffs was not erroneous because it made such payment conditional upon plaintiffs' paying defendant's costs and disbursements in the action, but should not have made such payment to plaintiffs conditional upon their paying defendant's expenses in connection with the action or conditional upon "the final termination of the action, by consent or otherwise, in accordance with" that judgment.

4. An attorney at law who drew a deed and a contract by the grantee to support the grantor, and who, at the grantor's request, signed such papers as a witness, was properly allowed to testify as to the mental competency of the grantor at that time.

5. A physician who signed a deed as a witness is competent to testify as to the mental competency of the grantor, where his testimony does not involve disclosure of any communications received by him while attending the grantor as a physician.

6. Error in the admission of evidence is immaterial where, even without such evidence, the findings of the trial court are abundantly supported.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Modified and affirmed.*

This is an action to set aside a certain deed and an alleged assignment or transfer of certificates of deposit from one Bridget Duffy to the defendant, *Margaret Robinson,* on the ground of undue influence and incompetency. The plaintiffs are children of Bridget Duffy by her first husband, one William Whalen, now deceased, and defendant a daughter by a second marriage with one Michael Duffy, now deceased. Bridget Duffy, prior to October 7, 1903, owned real estate in the city of Milwaukee valued at $25,000, subject to a $6,000 mortgage; also certificates of deposit in the Second Ward Savings Bank for $3,843, together with some furniture situate in her home valued at about $100.

The complaint alleges the death of Bridget Duffy July 2, 1904, intestate; that she left surviving the plaintiffs and defendant as her only heirs at law; that on October 7, 1903, and prior thereto, she was the owner and in possession of certain real estate in the city of Milwaukee, describing it, and was

eighty-two years of age at the time of her death, and had been prior thereto feeble in mind and body, and for a year or more preceding her death was incompetent to have the care and management of her estate or to care for herself; that on October 2, 1903, she took up her abode with defendant, *Margaret Robinson,* and continued to live and reside with her until the time of her death; that Bridget Duffy, by reason of her old age and bodily and mental infirmities, was easily influenced and subject to the control of defendant, and in consequence thereof defendant induced her by persuasion and the exercise of undue influence, while she was not of sound and disposing mind, to deed to defendant the real estate in question for the expressed consideration of $1, and that there was in fact no valid or good consideration moving from grantee to grantor for such conveyance; that between October 2, 1903, and the time of the death of Bridget Duffy, defendant induced her by undue influence to transfer without consideration certain certificates of deposit issued by one of the Milwaukee banks for about $3,800. The complaint prays judgment setting aside and canceling the deed in question and for general relief.

The answer denies the allegations of fraud, want of consideration, and undue influence, and alleges that the defendant for a long time prior to October 7, 1903, resided next door to Bridget Duffy, and with her from October 7, 1903; admits the execution and delivery of the deed from Bridget Duffy to defendant, also the transfer of the certificates of deposit; and alleges that the real estate in question was given and conveyed to Bridget Duffy by her husband, Michael Duffy, father of defendant, and by one Charles Duffy, a brother of defendant and son of said Bridget and Michael Duffy, and that the money for which the certificates of deposit were issued was given to Bridget Duffy by said Michael and Charles Duffy, or came from the income of the property so conveyed and given to Bridget Duffy by said Michael and Charles Duffy; and further alleges that, by reason of the plaintiffs being in no

wise related to or of the blood of the said Michael Duffy and his son Charles Duffy, they have no right, title, or interest as heirs at law or otherwise of Bridget Duffy in any of the property described in the complaint, according to the provisions of sec. 2272, Stats. 1898. The answer further alleges that, at the time of the execution and delivery of the deed by Bridget Duffy to defendant, defendant executed an agreement in writing which was delivered to and accepted by Bridget Duffy, to the effect that the defendant would support, care for, maintain, nurse, and in every way provide for said Bridget Duffy during her life, and at the time of her death would pay to *Mary Boyle,* her half-sister, $1,000 in cash, to *James Whalen,* her half-brother, $500 in cash, and to the Gesu church of the city of Milwaukee, or to the proper officers thereof, $1,000 for masses, and cause to be paid to the Little Sisters of the Poor of the city of Milwaukee $500; that defendant has been at all times ready and willing to carry out the conditions of this agreement on her part; that no demand was made upon her by plaintiffs, or either of them, before the commencement of this action, for any matter or thing concerning the estate or property of said Bridget Duffy; and that she complied with all the conditions of this agreement as to the care and custody of Bridget Duffy, and is ready and willing to carry out the other terms and conditions thereof; and denies the other material allegations of the complaint, and prays that the same be dismissed with costs.

The court found:

"(3) That for many years prior to October, 1903, the defendant had resided next door to said Bridget Duffy and had looked after, cared for, and visited the said Bridget Duffy daily. (4) That from on or about the 2d day of October, 1903, to the time of the latter's death, the defendant lived with said Bridget Duffy and had looked after, supported, cared for, maintained, and in every way provided for the said Bridget Duffy. (5) That at the time of the death of said Bridget Duffy she was about eighty-two years of age, and had been for some time prior to that time feeble in body. (6) That

on or about October 7, 1903, the said Bridget Duffy executed and delivered to the defendant a warranty deed of the hereinbefore described real estate. (7) That between October 7, 1903, and prior to January, 1904, said Bridget Duffy assigned and transferred to the defendant certain certificates of deposit, issued by the Second Ward Savings Bank of the city of Milwaukee, aggregating about the sum of $3,800. (8) That at the time of the execution and delivery of the aforesaid warranty deed by Bridget Duffy to *Margaret Robinson,* and in part consideration for the same, the said *Margaret Robinson* made and executed a certain agreement in writing and delivered the same to the said Bridget Duffy, and the same was received and accepted by Bridget Duffy at the time of the execution thereof, viz., October 7, 1903. (9) That said agreement, in substance, was a promise on the part of *Margaret Robinson* to support, care for, maintain, nurse, and in every way provide for Bridget Duffy, her mother, from the date thereof to the death of Bridget Duffy, and at her death to pay or cause to be paid to *Mrs. Mary Boyle* and *James Whalen* one thousand dollars ($1,000) and five hundred dollars ($500) in cash, respectively, and to pay or cause to be paid to the Gesu church of the city of Milwaukee, Wisconsin, the sum of one thousand dollars ($1,000) for masses, and to pay or cause to be paid the sum of five hundred dollars ($500) to the Little Sisters of the Poor of the city of Milwaukee, Wis. (10) That at the time of the execution and delivery of the aforesaid warranty deed by Bridget Duffy to *Margaret Robinson,* and in part consideration for the same, the said *Margaret Robinson* paid to the said Bridget Duffy the sum of one dollar ($1). (11) That at the time that Bridget Duffy executed and delivered the aforesaid warranty deed she was of sound and disposing mind and memory and mentally competent to comprehend the nature and effect of such transaction. (12) That at the times that Bridget Duffy assigned and transferred the said certificates of deposit she was of sound and disposing mind and memory, and mentally competent to comprehend the nature and effect of such transactions and of each of them. (13) That the execution and delivery of the said warranty deed was not procured by fraud, duress, or undue influence. (14) That the assignment and transfer of said certificates of deposit were not procured by fraud, duress, or undue influence."

The court made conclusions of law in accordance with the findings, and judgment was entered upon the findings dismissing the complaint upon the merits, and ordering defendant to pay to plaintiffs their respective sums provided for in the written agreement executed and delivered by *Margaret Robinson* to Bridget Duffy October 7, 1903, such payments to be conditioned upon payment by plaintiffs of the amount for which they are respectively liable for costs and disbursements and defendant's expenses in connection herewith, and conditioned further upon the final termination of the action, by consent or otherwise, in accordance with the judgment; and further ordering that defendant have and recover from plaintiffs the sum of $146.64, costs and disbursements of the action.

From the judgment entered plaintiffs appealed to this court and assigned the following errors: The court erred in finding that Bridget Duffy assigned and transferred the certificates of deposit to the defendant. The court erred in finding that at the time of the execution and delivery of the warranty deed *Margaret Robinson* executed and delivered the agreement in question to Bridget Duffy and the same was received by her. The court erred in finding that at the time Bridget Duffy executed and delivered the warranty deed she was of sound mind and competent to comprehend the nature of the transaction. The court erred in finding that at the time Bridget Duffy transferred the certificates of deposit she was of sound mind. The court erred in finding that the execution and delivery of the warranty deed was not procured by fraud, duress, or undue influence. The court erred in finding that the transfer of the certificates of deposit was not procured by fraud, duress, or undue influence. The court erred in adjudging that the defendant pay to the plaintiffs the respective sums provided for in their behalf in the agreement executed and delivered by *Margaret Robinson* to Bridget Duffy on the 7th day of October, 1903, such payments to be conditioned upon the payment by plaintiffs of the amount for which they are

respectively liable for costs and disbursements and the defendant's expenses in connection herewith, and conditioned further upon the final termination of the action by consent or otherwise in accordance with the judgment. The court erred in the admission of evidence. The court erred in refusing to find facts requested by the plaintiffs.

For the appellants there was a brief by *Ryan, Merton & Newbury,* attorneys, and *McCabe & Dahlman,* of counsel, and oral argument by *T. E. Ryan* and *C. A. McCabe.* They contended, *inter alia,* that the burden of proof was upon defendant to show that the transaction was untainted with fraud, duress, or undue influence. *Doyle v. Welch,* 100 Wis. 24; *Davis v. Dean,* 66 Wis. 100; *Henrizi v. Kehr,* 90 Wis. 344, 348; *Loennecker's Will,* 112 Wis. 461, 467. The attorney and the physicians who were subscribing witnesses might testify as such to the formal execution of the instruments, but should not have been permitted to make disclosures as to other matters. *Herman v. Schlesinger,* 114 Wis. 382; *In re Will of Hunt,* 122 Wis. 460.

For the respondent there was a brief by *McElroy, Eschweiler & Wetzler,* and oral argument by *F. C. Eschweiler.* As to the testimony of the attorney and the physicians they cited *McMaster v. Scriven,* 85 Wis. 162; *Koeber v. Somers,* 108 Wis. 497, 507; *Herman v. Schlesinger,* 114 Wis. 382, 389, 390; *Tichy v. Simicek* (Neb.) 95 N. W. 629; *Brown v. Brown* (Neb.) 108 N. W. 180, 181, 182. As to the validity of the transaction: *Winn v. Itzel,* 125 Wis. 19; *Vance v. Davis,* 118 Wis. 548; *Citizens' L. & T. Co. v. Holmes,* 116 Wis. 220; *Hermann v. Zachow,* 126 Wis. 441; *Schneider v. Vosburgh,* 143 Mich. 476, 106 N. W. 1129; *Drinkwine v. Gruelle,* 120 Wis. 628; *Haynes v. Harriman,* 117 Wis. 132; *Loennecker's Will,* 112 Wis. 461; *Linde v. Gudden,* 109 Wis. 326; *Deck v. Deck,* 106 Wis. 470; *Fox v. Martin,* 104 Wis. 581; *Jones v. Rice,* 99 Wis. 429; *McMaster v. Scriven,* 85 Wis. 162; *In re Nelson's Estate* (Neb.) 106 N. W. 326; *Meyer v. Arends,* 126 Wis. 603, 106 N. W. 675.

KERWIN, J.    The execution of the deed and the transfer of the certificates of deposit by deceased, Bridget Duffy, are attacked by plaintiffs on the ground of want of consideration, undue influence, and incompetency.    The court below found against the contention of appellants on these questions of fact, and upon well-established principles such findings must be sustained, unless the clear preponderance of the evidence is against them.    *Chase v. Hinkley,* 126 Wis. 75, 105 N. W. 230; *First Nat. Bank v. Buetow,* 123 Wis. 285, 101 N. W. 927; *Tate v. Jerman,* 123 Wis. 368, 101 N. W. 679; *Hutchins v. Bautch,* 123 Wis. 394, 101 N. W. 671.

1. Respecting want of consideration or failure on the part of *Margaret Robinson* to carry out her agreement made contemporaneously with the deed, providing for the support, care, and maintenance of the deceased, Bridget Duffy, during her life, and at her death the payment of certain amounts specified to the beneficiaries, there can be no question upon this appeal, so we shall confine our discussion here to the question of incompetency and undue influence.

The deceased, Bridget Duffy, and defendant's father, Michael Duffy, intermarried over forty years before the execution of the deed.    The defendant is the only surviving child of Michael and Bridget Duffy.    Plaintiff *Mary Boyle* is a married woman apparently in good circumstances, and plaintiff *James Whalen* testified that he went out of the laundry business in 1898, since which time he has lived on his principal, and has no family dependent upon him for support; that he lived in the family of Michael Duffy only six or eight months.    The defendant, *Margaret Robinson,* is the mother of five children.    Her husband became paralyzed in 1878 and since has been unable to work or aid in the support of the family, during which time defendant has supported herself and family, with the exception of some aid received from her son and daughters.    There is testimony tending to show that it was the desire of the defendant's father that defendant

should have the property in question; that the deed was prepared after Bridget Duffy had fully considered the-matter and had been advised in respect thereto,—so it appears that the transaction was not carried out hastily or without due consideration on the part of Bridget Duffy.

Testimony was offered on the part of the plaintiffs respecting the peculiar actions of Bridget Duffy for some time prior to the execution of the deed, to the effect that deceased was failing rapidly and was weak in mind for some time before her death; also testimony in a general way that she was not fit to do business from May, 1902; that she would at times do peculiar things, and appeared to exhibit symptoms of forgetfulness, and at times when on the street would lose her way when within a block of her home, and that she would make large purchases, far beyond what was necessary; also testimony by servants that she appeared strangely, would go about the house from top to bottom as though looking for something; that she would go to bed at 9 or 10 o'clock in the forenoon and ask if it were not night, and would go to bed three or four times a day and get up again; that defendant at times said she did not know what she was going to do with deceased, and that a guardian ought to be appointed over her; that deceased would at times offer to pay for things purchased a second time, and did not seem to know clerks at the store with whom she had previously traded; and that she would get up at all hours of the night and very early in the morning; did not know persons with whom she had been well acquainted.

On the part of the defendant there is evidence tending to show that up to about the time of her death deceased was of sound mind and competent to do business; that she did the purchasing for the house; although weak physically did not seem weak mentally; talked about selling her property; was perfectly rational, active, and smart until shortly before her death; was a very clear-headed, sensible, astute, keen woman three weeks before her death, unlettered, but clear-headed;

was mentally, though not physically, strong three weeks before death; talked about things that happened many years before; was secretive about her affairs and kept her own counsel, and was competent to transact business at the time the deed was made; that she lived nine months after execution of the deed.    Some of the witnesses who testified on the part of the defendant had known deceased for many years and were intimately acquainted with her.    Mr. Kershaw, who witnessed the deed, testified that he had known deceased for many years, and that he drew the deed in question at Mrs. Duffy's direction and took her acknowledgment, and that she was mentally competent when the deed was executed.    Dr. Burgess, a physician in Milwaukee, whom deceased consulted concerning the transfer of her property, testified that the day preceding the execution of the deed, when he had a conversation with her about her property, and during the time he was there, up to the time *Mrs. Robinson* began to speak about her mother's physical condition, deceased was mentally competent to transact business; that he had a high appreciation of her intelligence.    Jeremiah Quin, a prominent and respected resident of the city of Milwaukee, who had known Bridget Duffy for over thirty years, testified that he conversed with deceased about three weeks before she died; that she was a very clear-headed, sensible, astute, keen woman, unlettered, but very clear-headed, and that she was in mind mentally sound and competent, unquestionably; considered her of very sane mind, clear in her faculties and all right in every way; nothing in her actions, behavior, or conversation at any time prior to her death indicating that her mind was losing its power or that she was incompetent; she was certainly, to his mind, as vigorous three weeks before she died as she had been a year before; there was no substantial difference in her appearance or manner mentally, or the way she talked, three weeks before her death and conversations had for years past.

We have not attempted to review all the evidence, nor shall

we do so. We have given merely a general idea of the evidence offered on both sides respecting the competency of Bridget Duffy.

On the question of undue influence there is but little evidence. Counsel for appellants relies mainly upon inferences drawn from the relation of the parties, the fact that defendant installed herself in the home of Mrs. Duffy, and shortly thereafter obtained the deed, together with the alleged claim that the transfer by Mrs. Duffy was improvident and made no ample provision for protection. There is evidence that Mrs. Duffy was a self-willed woman, and when her mind was made up she could not be turned; that she stated that she was going to give the property to defendant, because she was poor and needed it and because her father wanted her to have it. She made the deed and took the agreement after consultation not only with her lawyer, but with one of her neighbors in whom she had confidence. Obviously she entered into the transaction with care and deliberation. Some point is made by appellants upon the fact that defendant kept the transfer to her a secret and did not inform relatives of it, and also gave instructions when the deed was recorded to prevent publication of the recording thereof in the Milwaukee papers. But defendant testified that this was the wish of her mother. It also appears that at or about the time of the making of the deed defendant remonstrated and said: "I don't want mother to do this. It will make trouble with my sister." And Mrs. Duffy said she had been thinking about it a long time and that was what she wanted to do, and that there would be no trouble if defendant would keep her mouth shut. So it is very evident that Mrs. Duffy desired the matter kept quiet. Hence the instructions that the recording of the deed be not published. There is nothing in the evidence tending to show that the burden of proof was upon defendant. In *Winn v. Itzel,* 125 Wis. 19, 32, 103 N. W. 225, referring to *Davis v. Dean,* 66 Wis. 100, 26 N. W. 737, cited by counsel for ap-

pellants, this court, speaking through Mr. Justice WINSLOW, said:

"After as well as before that decision it was the duty of the court at the close of the plaintiff's case to decide whether a *prima facie* showing of fraud had been made, if the question was raised by proper motion on the part of the defendant. After as well as before that decision, in case the trial court held that a *prima facie* showing of fraud had been made, the defendant could either stand upon the plaintiff's proofs and challenge their sufficiency in this court, or he could introduce his own proofs tending to rebut the plaintiff's case and establish his innocence. In this sense, and in this sense only, the burden of proof shifts. When the plaintiff makes a *prima facie* case, entitling him to relief if the proof stops there, the defendant must take up the burden and meet the case so made by other evidence. This is the case in all contests of fact. It is not peculiar to fraud cases. The rule of *Davis v. Dean* did not change the long-established rule, nor did it tend to do so. It simply announced what facts would be considered as *prima facie* proof of fraud, requiring explanation by the defendant."

2. Respecting the certificates of deposit, it is clear that they were freely and voluntarily turned over to defendant by Bridget Duffy, and that defendant drew the money and deposited it in her own name, and afterwards drew it at various times from October 13, 1903, to August 10, 1904, in amounts varying from $100 to $1,200, and $1,000 of it was drawn after Mrs. Duffy's death. It also appears that defendant applied part of the money so drawn with the consent and for the use of Mrs. Duffy, and there is evidence to the effect that part of the money was applied by defendant in payment of Mrs. Duffy's debts. But just how much was so applied does not definitely appear. We do not think the evidence shows that defendant became the owner of these certificates. We are in doubt whether the court below intended to so find, or whether the judgment is capable of such construction. The judgment decrees that the certificates were transferred to de-

fendant, but whether in her own right, or for the use and benefit of Bridget Duffy, does not clearly appear. The judgment should therefore be so modified as to make it clear that the defendant's title to this money, or the portion remaining at the time of Mrs. Duffy's death, is not passed upon in this action.

3. Complaint is also made by appellants because the judgment makes the payments specified in the agreement of October 7, 1903, referred to in the statement of facts, conditioned upon the payment of costs and disbursements by the plaintiffs "and the defendant's expenses in connection herewith, and conditioned further upon the final termination of the action by consent or otherwise in accordance with this judgment." We think the judgment should be further modified by striking out the above-quoted portion, but we see no objection to the part which makes the payment of the amounts specified in said agreement conditioned upon payment of the costs and disbursements of this action.

4. Error is assigned upon the admission of evidence of Mr. Kershaw, an attorney who drew the deed and agreement in question. He was requested by Mrs. Duffy to sign the papers as a witness and did so. Upon the trial he was interrogated respecting the mental competency of Mrs. Duffy at the time of the execution of the papers, and the testimony was objected to and the objection overruled. The admission of his evidence was proper. *McMaster v. Scriven,* 85 Wis. 162, 55 N. W. 149; *In re Will of Coleman,* 111 N. Y. 220, 19 N. E. 71. Dr. Burgess, a prominent physician of Milwaukee, was also called and examined as a witness respecting the mental competency of Mrs. Duffy, and objection was made to his evidence on the ground of privilege. It does not appear, however, from the evidence that the answers to the questions asked Dr. Burgess involved disclosure of any communications received by him while attending her as a physician. Besides, it appears he signed the deed as a witness. His evidence was

therefore competent.    There may be doubt as to whether the testimony of Dr. Kelly was properly admitted, but it is wholly immaterial in this case whether competent or not, since there is abundance of evidence to support the findings without it, and therefore, upon well-established principles, its admission, even if improper, cannot affect the judgment.    *Winn v. Itzel,* 125 Wis. 19, 103 N. W. 220; *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909; *Hill v. Am. S. Co.* 112 Wis. 627, 88 N. W. 642; *Duncan v. Duncan,* 111 Wis. 75, 86 N. W. 562.

*By the Court.*—The judgment of the court below is modified by adjudging that the certificates of deposit were transferred, but defendant's title to the money thereby represented is not passed upon; and further modified by striking out the last part of the nineteenth paragraph, which reads, "and the defendant's expenses in connection herewith, and conditioned, further, upon the final termination of the action, by consent or otherwise, in accordance with this judgment;" and as so modified is affirmed.    No costs will be allowed either party in this court, except that respondent pay the clerk's fees.