Geiger, J.
Clara J. Mills died on the 4th day of March, 1916, leaving an estate of approximately $100,000 to her nephew, Edward Cultice, and his wife, Iva Cultice.
The will was dated February 26th, 1915, and the two codicils thereto were dated February 26th, 1915, and December 19th, 1915.
An action was brought to contest the validity of this will and the codicils thereto, and an issue made up. which was tried to the jury. The verdict of the jury sustained the will and codicils.
A motion for a new trial is made on the ground †-hat the verdict is not sustained by the evidence, and on account of alleged errors of the court in numerous particulars. l
The questions raised are numerous, and it would be impossible to express the court’s opinion in detail on each point upon which it is claimed by counsel that the court erred. Those points which seem to be most important will be here considered at some length, while upon other points the court will simply announce his conclusions.
The testimony introduced bore largely upon the alleged mental incapacity of the testatrix, by reason of her extreme age and on account of a serious accident suffered by her just prior to the making of the will.
The will was witnessed by Mr. O. S. Olinger and Dr. R. B. Horse. Mr. Olinger, an attorney at law, was counsel for Mrs. Mills, and as such consulted with her at the time of making the will. After the will was drawn Mrs. Mills requested Mr. Olinger to act as a witness, which he did, and Dr. R. B. House, the physician who attended the testatrix at the time the will was made, and long prior thereto, also signed as a witness.
Upon the trial the contestees offered Mr. Olinger as a witness, and the court permitted him, oyer the objection of counsel for contestors, to give evidence as to the testamentary capacity of *211 the testatrix as shown by her acts and conversation at the time he consulted with her as an attorney in reference to the will, the will being executed the same day. The ruling of the court in permitting Mr. Olinger to testify is claimed by counsel for the eontestors to have been prejudicial error.
The question is whether Mr. Olinger, being counsel for Mrs. Mills, was prevented by Section 11494, General Code, from being a witness. This section provides:
“The following persons shall not testify in certain respects. (1) An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; or a physician concerning a communication made to him by his patient in that relation, or his advice to his patient. But the attorney or physician may testify by express consent of the client or patient; and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject.”
. In this case the client being dead, it was impossible for her either to testify voluntarily or to give express consent at the time of the trial, that her counsel might testify.
The purpose of the evidence offered was to throw light upon the question whether the testatrix was, at the time of making her will, of sound mind and memory, and such testimony would unquestionably have been competent had it been given by a person other than the counsel for the testatrix.
It is urged by counsel for eontestors that the consent given when the testatrix requested the attorney to act as a witness can only be implied and that this “implied” consent falls short of the “express” consent required by the statute, and by the case of Ausdenmoore v. Holzback, 89 O. S., 381, and that to permit the attorney to testify there should have been an express consent given by the testatrix, either in the will itself or in some other manner. Citing Bowers on Law of Waiver, Section 192, and cases cited in notes; McMasters v. Scriven, 85 Wis., 168; Herman v. Schlesinger, 114 Wis., 382.
The question narrows to the point as to whether a request made by the testator that his attorney act as a witness to his will, is an express consent that such attorney shall testify whenever called upon to probate' the will, or sustain its validity, or *212 is only an implied consent falling short of the requirement of the statute.
There appears to be no authoritative case in Ohio upon the question as to whether the disability of the statute is removed when a testator requests the attorney, to whom he has made a communication in that relation, to act as a witness to the will. The same statute, in reference to a physician, is commented upon in the case of Ausdenmoore v. Holzback, supra.
The court, in speaking of the qualifying language which -permits a physician to testify, says:
“This qualifying clause we hold to mean there can not be a waiver except in two ways: First, by an express consent of the patient, or by the patient taking the stand and voluntarily testifying as to the things and matters communicated to his physician, the latter being held to be in effect an express waiver as to that physician.”
The rule above expressed by the court seems to have been broadened where a will is in contest, in the case of Bahl v. Byal, 90 O. S., 129, where it is held that it is competent for a physician of the testator to express an opinion as to the condition of the patient’s mind, founded on his study and observation of the testator while in professional attendance upon him.
'This question, while undecided in Ohio, is not so in other states. In the Matter of Coleman, 111 N. Y., 220, the court construes the statute of New York, differing slightly from the Ohio statute. By the New York statute the pledge of secrecy imposed by the statute is to be observed unless its provisions are ‘ ‘ expressly waived by the client. ’ ’ In that case the court was of the opinion that because of the request made by the testatrix that her attorney act as a subscribing witness to the will the provisions of the statute as to secrecy were expressly waived, and that the attorney became a competent witness in all matters in relation to the execution of the will, including the testamentary capacity of the person making the same. To the same effect are: Thompson on Wills, Section 127; Paige on Wills, Sections 364, 365; Am. & Eng. Ency. of L., Vol. 23, 77; cases cited in Am. Dig. Cent. Ed. Vol. 50, columns 993-995; Jones on Evidence, Vol. 4, Section 755; In re Mullins Estate, 42 Pac. (Cal.), 645; Speer v. Speer, 146 Iowa, 6; Sellars v. Sellars, 49 Tenn., 430.
*213 It appears to the court that under these authorities there can be no escape from the conclusion that when a person about to make a will consults with an attorney and makes communications to him in that capacity, and after the will is drawn requests that such attorney act as a witness, that such testator thereby expressly consents and agrees that the attorney may appear and testify, both in the probate of the will, and in any proceeding that may affect its validity.
To put the construction upon the act of the testator insisted upon by the contestors would be to nullify the very purpose of the testator in requesting the trusted adviser to act in the capacity of a witness. The purpose of the statute is to protect the confidential communications made by a client to an attorney, and it can scarcely be conceived that the protection thus given to the client should be used to deprive him of the services of the one who is best able to give testimony as to his testamentary capacity after his death.
'The court therefore holds'that there was no error in permitting Mr. Olinger, though an attorney for the testatrix, to testify as a witness to communications made to him by his client in that relation, and as to his advice to his client at the time of making the will, where such testimony bears upon the testamentary capacity of the client.
Dr. R. B. House, the other witness to the will and the family physician of the testatrix, died before the testatrix, and in the probate of the will his signature was proved by witnesses familiar therewith.
The statute provides that upon the trial of an issue the order of probate shall be prima facie evidence of the due attestation, execution and validity of a will.
The contestors sought to introduce evidence tending to prove statements made by Dr. House immediately after he had witnessed the will to the effect that the will was not valid because of the mental incapacity of the testatrix. The court sustained the objection of the contestees to this evidence.
It is claimed by counsel for contestors that inasmuch as it is the law of Ohio that a person who attaches his name to a will as a witness impliedly certifies that the testator is of sound mind and has capacity to form the purpose and intention of disposing *214 of his property by will (Stark, Extr., v. Cress et al, 22 C.C. [N.S.], 88), that such implication may be overcome by showing the declarations of such witness made outside the court, even though such witness to the will has not been called into court.
Yery interesting briefs are presented by counsel for both sides and numerous eases are cited, among which is the case of Runyan v. Price, 15 O. S., 1, which appears to be but imperfectly indexed and digested on this point. It is admitted by counsel for contestors to be directly in point and to sustain the court in its ruling. In that case one of the subscribing witnesses had died before trial, and his testimony taken at the probate of the will was read in evidence. The contestors then offered in evidence declarations of the witness, respecting the capacity of the alleged testator to make a will at the time the one in question purported to have been made, for the purpose of impeaching his testimony.
It was held that before such statements can be given in evidence to impeach the witness he must be interrogated as to the same; and the fact that an opportunity for such examination has been cut off by the death of the witness does not form an exception to the general rule. The want of such examination goes to the competency of the evidence; and where the witness had no opportunity of explaining the supposed declarations, nor the party to be affected thereby of examining him in reference thereto, this mode of impeachment can not be resorted to.-
'This is an interesting ease, decided as to this proposition by a divided court — Judges White, Brinkerhoff and Scott concurring, and Judges Ranney and Wilder dissenting.
It is urged by counsel for contestors that the matter should be examined de novo, in the light of more recent decisions in other states and opinions of text-book writers.
A number of authorities have been cited which seem to support the contention that such evidence may be admitted, as follows: Wigmore on Evidence, Volume 2, Section 1033, sub-div. 4; Sections 1505-1514; 14 Ency. of Evidence, 420; 40 Cyc., 1302, and cases cited; In re Will of Hesdra, 119 N. Y., 615; Church v. Ten Eyck, 25 N. J. L., 40.
The court is not sufficiently impressed with the reasoning of the above authorities to wish to depart from the authority of *215 Runyan v. Price. The reasons given in the opinion, and especially the reasons given by Judge Brinkerhoff, appeal strongly to this court. It would be highly dangerous to allow, interested witnesses to appear and give testimony as to the declarations of a deceased witness to a will reflecting upon the testamentary capacity of the testatrix.
It is true that the accident of the death of this witness places the contestors at a disadvantage if, as claimed by them, he during his lifetime made the remarks claimed, reflecting upon the testamentary capacity of the testatrix; but it would be more unjust to the contestees should the accident of his death permit a flood of hear say testimony as to his declarations to contradict the implication that arises from the fact that he signed the will as a witness. As Judge Brinkerhoff says:
“Such declarations are based on the lowest kind of evidence, and the administration of justice will suffer little in any case by their exclusion; while, if admitted, and they are falsely alleged against a dead witness, it would be hardly possible ever to disprove them.”
The court therefore holds there was no error in excluding the testimony of the witness offered by the contestors, as to alleged statements made by Dr. House, the deceased witness, reflecting upon the testamentary capacity of the testatrix.
, All the property of the testatrix was given by her will to Edward Cultice and to his wife, Iva Cultice. Upon the trial the contestors sought to introduce testimony of witnesses as to alleged declarations of Mr. and Mrs. Cultice, reflecting upon the testamentary capacity of the testatrix. The court sustained the objection to this evidence on the authority of Thompson v. Thompson, 13 O. S., 356, where it is held that on the trial of an issue, in a proceeding under the statute to contest the validity of a will, declarations in reference to mental capacity of the testator, made by a legatee or devisee who is a party defendant to the proceeding, are not admissible in evidence to impeach the will, where there are other legatees or devisees whose interest may be injuriously affected by the introduction of such evidence.
It is claimed by counsel for the contestors that inasmuch as Mr. and Mrs. Cultice were the sole beneficiaries under the will that the rule would not apply.
*216 The court can not see by what theory the rule should be relaxed from the mere fact that certain declarations are alleged to have been made by all of the beneficiaries under the will. They did not make the same declarations, and neither joined in the declarations of the other, and the reasoning of the case cited would certainly not have permitted the declarations of either to be introduced, except as to throwing light upon their credibility.
The court therefore holds there was no error in excluding testimony in chief as to the alleged declarations of Mr. and Mrs. Cultiee, reflecting upon the testamentary capacity of the testatrix, and in limiting such testimony when introduced in rebuttal to the effect that it might have upon the credibility of the witness alleged to have made them.
One of the grounds set out in the motion for a new trial is that the court erred in instructing the jury that three-fourths of their number could return a verdict; and, further, that the verdict returned by nine jurors in this case is unauthorized and not a valid verdict.
In support of this contention it is urged that the contest of a will, being a special statutory proceeding, does not fall within the constitutional and statutory amendments permitting a verdict by three-fourths of the jurors.
This contention is not without judicial support. An interesting case, throwing some light upon the question, is that of Schneider et al v. Reitelbach et al, 17 N.P.(N.S.), 124, the opinion being announced by Judge Kinkead, of the Common Pleas Court of Franklin County.
In that case it is held that the civil action created by the code, embracing as it does only the common law and equity actions, does not include the statutory remedy of contest of wills, in so far as the latter may be invested with the procedural incidents of the former.
It is held that the proceeding to contest a will is a statutory remedy or action, in which the right of trial by jury exists not by constitutional right, but by statutory sanction. It is pointed out by the judge rendering the opinion that there is a clear distinction between civil actions and extraordinary remedies and statutory proceedings such as the contest of a will. The court says:
*217 "It is indisputable that the civil action was not intended to taire the place of statutory remedies of partition, dower, the extraordinary remedies, contest of wills,” etc.
'The same judge, in the case of State, ex rel Sonnanstine, v. Bostwick, 18 N.P.(N.S.), 24, holds that the three-fourths jury rule does not apply to the jury of five electors to whom is submitted the determination of the right of property levied upon under an execution, as provided by Section 11741 et seq. of the General Code, relating to the justice’s court, for the reason that it is a special statutory proceeding, as distinguished from a civil action. The court says:
"It is not a civil action or civil ease such as contemplated by Section 10350 of the justice’s code, wherein it is now provided that a'three-fourths verdict may be rendered by a jury.”
Following the same line of reasoning is the case of N. & W. Ry. Co. v. Foster et al, 19 N.P.(N.S.), 267, in which it is held that a proceeding for the appropriation of property is a special proceeding, and not a civil action within the meaning of Section 11455, General Code, as amended, providing for the return of a verdict upon the concurrence of three-fourths of the jury therein.
The court arrives at the conclusion that the appropriation of property is not a civil action, but is a special statutory proceeding, and that therefore the three-fourths jury rule doea not apply.
In the case of Slemmons et al v. Toland, 25 C.C.(N.S.), 485, it is decided that Article I, Section 5 of the Constitution, and Section 11455, General Code, include actions to contest the validity of a will, and a verdict in such actions may be rendered upon the concurrence of three-fourths or more of the members of the jury. This authority fully supports the instruction given in this case, that a verdict could be rendered by three-fourths of the jurors.
The court holds that the contest of the validity of a will is a civil action and that the trial proceeds under the civil code. In this respect the opinion of the court differs from that announced in Schneider v. Reitelbach, supra.
*218 This court, however, is disposed to base its decision on broader grounds than those announced in Slemmons et al v. Toland.
Section 5, Article I of the Constitution as amended in 1912, provides that the right of trial by jury shall be inviolate, except that in civil cases laws may be passed to authorize the rendering of a verdict upon the concurrence of not less than three-fourths of the jury. This amendment went into effect on the first of January, 1913. It was not self-executing, and required legislative action before it could become effective. Elder v. Shoffstall, 90 O. S., 265.
In February, 1913, the Legislature amended Sections 11455, 1579-19 and 10350, 103 Ohio Laws, pages 11, 12 and 13, providing for a three-fourths verdict in the courts of common pleas, municipal courts and justices’ courts.
Section 11455 provides in all civil actions the jury shall render a verdict upon the concurrence of three-fourths or more of their number. The statute uses the words, “civil actions,” whereas the constitutional provision uses the words “civil cases.”
Civil actions and civil cases are used synonymously in the constitutional provision and in the amendatory statutes, and are clearly not used in the technical sense as distinguishing a civil action from a special statutory proceeding.
A study of the proceedings and debates of the Constitutional Convention of 1912, pages 129-131, 141, 142, 168-172, 175-198, in reference to this amendment, clearly discloses that the members of the convention considered that the amendment should apply to all cases other than criminal proceedings. Several amendments were introduced and voted down which omitted the words ‘1 civil cases, ’ ’ which now appear in the Constitution, with-a view to making the amendment applicable to both civil and criminal eases.
The convention in its address to the people submitting the amendment to the consideration of the electors made the following notation:
“By this amendment no change is made in the right and the method of trial by jury in criminal cases, but if the law-making body so desires, provision may be made that in civil cases a verdict may be rendered in the event that not less than nine of the jurymen agree therein.”
*219 Whatever weight may properly be given to the discussions of the convention and the address to the people is in favor of the construction that the amendment is to control the verdict of the jury in all cases other than criminal.
If the narrow view is taken that the amendments apply only to what are technically civil cases, it would lead to endless confusion and uncertainty in determining whether or not the three-fourths rule should apply in any particular case, as it would be first necessary to determine whether the cause being tried was technically a “civil action,” or a special statutory proceeding.
Of all the amendments of the Constitution relating to judicial procedure, the one providing for a three-fourths verdict is by far the most valuable. Indeed, there are many who assert that the other amendments are more fraught with harm than with good, and it would be very unfortunate if a technical construction of the words “civil action” would limit this beneficial amendment to a certain class of cases and remove others from its benefits.
The court is clearly of the opinion that the constitutional amendment, and statutory amendments to carry the same into effect, provide for a three-fourths verdict in all cases tried in common pleas, municipal and justices’ courts which are not criminal eases.
It would seem that Section 11212, General Code, would make .the same rule apply to eases in probate court.
The other grounds set out in the motion for a new trial need not be further mentioned. The motion for a new trial is overruled.