## MARY ANN McELENEY and Others v. ELIZABETH DONOVAN and Another.[1]

November 8, 1912.

Nos. 17,650—(45).

**Cancelation of deed — evidence.**

In this an action to set aside a deed to a daughter of the grantor, the evidence sustains the finding of the jury that the grantor was competent, and also that no undue influence was exerted upon him.

**Opinion evidence.**

A witness who has had business transactions with a person, has known him, and observed and talked with him, may, after having detailed the business had and observations made of such person, properly give an opinion concerning his mental state.

**Conversations with decedent — who may testify to.**

A child of the grantee in the deed sought to be set aside is not an interested party, prohibited by the statute from testifying to conversations between the deceased grantor and his son.

**Burden of proof — undue influence.**

The jury were properly instructed that the burden was on plaintiff to prove the incompetency of grantor and the undue influence alleged; also

[1] Reported in 138 N. W. 306.

Note. —As to opinion evidence by nonexpert as to the testamentary capacity of another, see note in 37 L.R.A.(N.S.) 595.

that there was not any evidence of fiduciary relations, or relations of confidence and trust, between grantor and grantee, that would give rise to the presumption that undue influence had been used by or in behalf of the grantee.

**Assignments of error.**

Other assigned errors examined, and found without merit.

Action in the district court for Waseca county to set aside a certain deed from Michael McGonagle, deceased, to defendant Elizabeth Donovan and for an accounting of rents and profits. The complaint alleged that the execution of the conveyance was procured solely by the exercise of undue influence practised upon the grantor by defendants; that at the time of the execution the grantor was not mentally competent to understand the effect or nature of his act; and that it was not his voluntary act and he was not a free agent. The answer admitted the execution of the deed, but denied the foregoing allegations. The case was tried before Childress, J., and a jury which returned answers to the special questions submitted to it, as stated at page 296. From an order denying plaintiffs' motion for judgment in their favor, notwithstanding the verdict, or for a new trial, they appealed. Affirmed.

*R. T. Boardman, P. McGovern* and *Henry M. Gallagher,* for appellants.

*Moonan & Moonan, E. B. Collester* and *Charles Spillane,* for respondents.

HOLT, J.

Action to set aside a conveyance on the ground that it was obtained by undue influence, and that the grantor was mentally incompetent at the time of its execution. Both issues were submitted to a jury, and answered in defendants' favor. The appeal is from an order denying plaintiffs a new trial.

The plaintiffs are three daughters of Michael McGonagle, the grantor in the deed sought to be annulled. The defendant Elizabeth Donovan is his youngest daughter, and the grantee in the deed.

The other defendant is her husband. The grantor died December 26, 1910, at the age of eighty-five years, leaving four sons, four daughters, and the children of a deceased son as his heirs. As the sons started out for themselves, he had given each a farm. He retained the 200-acre farm he had conducted while the family was growing up, and had evidently determined to give that to his four daughters, in addition to $500 given to each, except the defendant Elizabeth, who then received only $300; for he had made two wills and a codicil to that effect. The first will was made about eleven years, and the codicil to the second two or three years, prior to his death. His wife died twelve or thirteen years before he did, and soon after he rented out the farm, and had made his home with defendant for the last eleven years of his life. He was on very friendly terms with all the children, and made them visits, some of these lasting for several months. About November 1, 1910, advancing age and impaired heart action confined him to the house. Because of bronchial trouble and the weak heart, he was for the most part, in November and December, 1910, compelled to sleep in a chair. On the nineteenth of November he signed a deed to the land, wherein the defendant, Elizabeth, was grantee; but four days later, becoming dissatisfied because he had made no reservation for himself, the deed in suit was executed, wherein it was stipulated that he should have $200 a year from the rent of the farm, and the rent of one forty should go to the son John, who was mentally weak, for life.

The errors assigned are: That the verdict is not justified by the evidence, and contrary to law; erroneous rulings on the admission of certain testimony; objectionable instructions to the jury; and refusal to give a requested instruction.

The execution of the deed by the grantor was one of the questions submitted to the jury, although this was alleged in the complaint and admitted in the answer. Therefore the assignment of error that the verdict is not justified by the evidence must be confined to the answers given to the other two questions submitted, viz.:

"Was Michael McGonagle of sufficient mental capacity to make a deed on the twenty-third of November, 1910?" Answer: Yes.

"If you find that Michael McGonagle did execute said deed, and

was of mental capacity to make such deed, was said deed procured by undue influence, exerted upon him by defendants, or either of them?" Answer: No.

It is sufficient to say that his attending physician, present at the time, and another physician of his acquaintance, who saw him at about the days on which the deeds were executed, the two different attorneys whom he consulted about the transaction, and who prepared, witnessed, and took the acknowledgment of the deeds, testify to his mental competency to transact his business. These are also corroborated by neighbors, attending nurses, and acquaintances. To be sure, there is evidence from plaintiffs' two sons, and one or two other persons, that the grantor, upon the nineteenth and twenty-third of November, 1910, was in a stupor, did not take notice of what was being done, and did not recognize those about him.

We cannot escape the conviction, after a careful reading of the evidence, that it would have been extremely difficult for a jury to have reached any other conclusion than that Mr. McGonagle was mentally competent to transact his own business when he made the conveyance. The same may almost as confidently be asserted in support of the jury's finding on the proposition of undue influence. The son, who usually assisted the grantor in important transactions, knew of the deed within a day or two after it was made. He remonstrated neither with his father nor defendants. The old gentleman had made his home with defendants for more than eleven years, was attached to the children in the family, knew that his youngest daughter and her husband had had sickness and financial reverses to contend with, and it was not strange that he should come to the conclusion that this daughter was in more need of his bounty than the other children. That defendants may have been anxious to get the farm is undoubtedly true; also that they were not eager to start the storm, which was sure to come when the other children ascertained what had been done, by telling them about it; but this desire and secrecy do not necessarily prove that undue influence was used. The jury having found, on conflicting evidence that no undue influence was used by either of defendants, and this having been approved

by the trial court, we are clear that the record does not justify us in disturbing such finding.

The errors assigned as to rulings on the admission of testimony do not appear substantial. Thus, on objection, the attorney who prepared the deed, when called as a witness by plaintiffs, was not permitted to answer the question: "Did he give you any reason for disinheriting all his children, and giving all his property to one?" But he was required to answer this, which appears to us a more proper question: "Did or did not he state any reason why he made the deed at this time?" Witnesses who had known the grantor for a long time, and had had business or professional transactions with him, after testifying to these, were permitted to express their judgment as to his mental condition, and we think rightly so. Woodcock v. Johnson, 36 Minn. 217, 30 N. W. 894; In re Pinney's Will, 27 Minn. 280, 6 N. W. 791, 7 N. W. 144.

A daughter of defendant was allowed to testify to a conversation she overheard between the grantor and his son Michael, over plaintiffs' objection that she, being an interested party, could not testify to a conversation between the deceased grantor and his son, and for the further reason that the statute prevents the son from refuting her testimony. In 40 Cyc. 2285, it is stated: "Nor is a witness so interested as to be disqualified merely because, as heir to a living party to the suit, he may ultimately share in the property to which the suit relates"—citing Harraway v. Harraway, 136 Ala. 499, 34 South. 836, and Boyd v. Boyd, 163 Ill. 611, 45 N. E. 118.

No specific mention need be made of any other rulings assigned as error, for a mere inspection of the record proves them devoid of merit.

As to the instructions complained of, one is that the court, after stating to the jury that the questions submitted were to be answered simply by "Yes" or "No," continued: "When you have returned your answers, then the court will go all over the evidence and all over the case, and determine whether or not the deed should be set aside. It will be in the final analysis of the case a question for the court to decide; but those particular issues are to be submitted to the jury for your determination first. Of course, the court will be governed by the answers which the jury makes to those particular questions

in determining whether or not the facts relating to those questions are true or not." The appellants urge that, even including the last sentence, they were prejudiced, because the jury were virtually told that their verdict was of no great consequence to the litigants, because the court was the final arbiter. It is perhaps as difficult to discern the purpose of the instruction as to point out wherein either litigant was prejudiced thereby.

The court, in effect, charged that the burden was on plaintiffs to show that the grantor was not of sound mind when the deed was executed, as well as to establish the use of undue influence in its procurement, and refused to give an instruction that, if they found that a relationship of confidence and trust existed between the father and daughter, then the burden would fall on defendants to show that the daughter took no advantage of the father in her own interest, and not on plaintiffs to prove that defendants, or either of them, had unduly influenced the father, or that he was not competent to transact any business, but instead instructed that there was no evidence of any fiduciary relations between the father and defendants.

The action is to set aside a deed on the ground that the grantor was not competent to transact business and the grantee used undue influence. A deed, duly witnessed and acknowledged by a grantor, is proof that whatever title the grantor had and purported to convey vested in the grantee, without any further testimony as to the mental condition of the grantor; and the burden is undoubtedly on the one who seeks to have the deed annulled to prove the facts upon which the action is predicated. Counsel admits this general rule, but contends that in this case certain facts and circumstances appeared which shifted the burden of proof to the defendants, and the court should have so charged the jury.

We doubt whether any practical gain is made in the administration of justice by the adoption of a rule requiring a jury to stop at intervals in the trial to determine which litigant wins if the trial there ends. The minds of jurors differ. One may conclude a fact is proven, when the others are still doubting or unconvinced. In a certain sense, during the trial of the case, the burden continually shifts or changes, in that after one witness has testified the court or jury

might conclude that, if there was no further proof, the facts testi-
fied to by such witness are established; but, as other witnesses are
heard, the conclusion first arrived at is overcome. It is also true
that the proof of certain facts in a trial may give rise to presumptions
of the existence of an ultimate fact or issue necessary to establish,
and that, unless evidence is then adduced to overcome such presump-
tion, the case ends. This is sometimes referred to as shifting of the
burden of proof, but we think improperly. The fact is, the burden
in every cases rests on the litigant who has the affirmative of an issue
to prove it; otherwise, his opponent wins. It seems neither useful nor
proper to inquire how he maintained this burden at any particular
stage in the trial. The important consideration is: Where is he
left when all the evidence is in ? Does the fair preponderance there-
of then establish the issues he by his pleadings undertook to estab-
lish ?

Tyner v. Varien, 97 Minn. 181, 106 N. W. 898; Fischer v. Sperl,
94 Minn. 421, 103 N. W. 502, and Clarity v. Davis, 92 Minn. 60, 99
N. W. 363, relate to wills, where, of course, the burden is upon pro-
ponent to establish the will by proof that it is the act of a testator
who was then capable and competent; but we do not think the effect
of these decisions is to support appellants' contention. In an ac-
tion of this kind the burden is always on the plaintiff to prove the
undue influence or incompetency alleged. Mr. Justice Bunn, in
Howard v. Farr, 115 Minn. 86, 131 N. W. 1071, said: "There is
no reason for not applying the familiar rule that the party who seeks
to set aside a solemn instrument like a deed on the ground of fraud
or undue influence, which is a species of fraud, has the burden of
proof." Such is also the rule in Prescott v. Johnson, 91 Minn. 273,
97 N. W. 891; Rader v. Rader, 108 Minn. 139, 121 N. W. 393, and
Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287.

We conclude the court was right in stating to the jury that there
was no proof of any fiduciary relations between grantor and grantee
in the deed. This term is sometimes used as equivalent to confi-
dential relations, but perhaps not accurately; for the former arise
from some trust, either voluntarily assumed by one person toward
another, or by law imposed. The relation between parent and child

is also spoken of as one of confidence and trust. But we have not found or been directed to any decision holding that, upon it being shown that the relation of parent and child exists between donor and donee, the presumption of undue influence follows. The existence of the relationship is an important factor to consider, and must cause the court or jury to carefully scrutinize the evidence, to see whether an advantage has been taken by the donee over the donor by reason thereof. We think that, before presumptions of undue influence may be drawn from the fact that a donee is the child of the donor, it must appear that such donee stood to the donor in a relation other than the ordinary intimate, and even affectionate, relation existing between parent and child. It must be shown that the donee occupied a position to dominate the donor, or exert an influence over him, by virtue of being intrusted with the donor's business affairs.

In this case it does appear that, if any relationship of trust and confidence in relation to business affairs existed between the father and any of the children, such child was the son Michael, who was informed of the deed soon after its execution. The defendants never appeared to have attended to the father's business, nor to have taken charge of any of his valuable papers, nor to have advised him in regard to his business affairs. The inference is strong that the father had not leaned so much on the daughter as she on him. The dutiful care which this daughter rendered her father, the friendly assistance in the matter of noting down what his desires were when his defect of speech prevented others from fully understanding him, and the alacrity with which she and her children did his bidding when informed that he wanted to deed the farm to her, fall short of showing such confidence and trust between the parent and child that a presumption of undue influence arises, under the rule announced in Ashton v. Thompson, 32 Minn. 25, 18 N. W. 918, and the authorities generally.

We discover no prejudicial error in the record.

Order affirmed.