## ELEANOR SHAUGHNESSY AND OTHERS v. THOMAS WILLIAM SHAUGHNESSY AND OTHERS.[1]

### December 29, 1916.

### Nos. 20,040—(189).

**Gift — mental capacity of donor — verdict not sustained.**

1. The evidence does not sustain the finding that the grantor was mentally incompetent to transact business when she signed and acknowledged the deed here attacked.

**Same — undue influence.**

2. The finding that the deed was procured by means of undue influence, exerted by the grantees upon the grantor, cannot be disturbed except for prejudicial error committed in the trial of such issue.

**Cancelation of instrument — charge to jury.**

3. The statement in the charge that the grantor in the deeds here involved was attempting to distribute her estate among those who were to have it after her death was not improper, since the court evidently referred to a completed transaction and not to one wherein the grantor retained the control over the delivery of the deeds.

**Same — undue influence — burden of proof — charge erroneous.**

4. The burden of proof to establish undue influence is upon the party attacking the conveyance, and the charge that the burden shifted, because during the trial certain presumptions of fact might arise in aid of the other party, was erroneous.

**Delivery of deed.**

5. It does not appear as a matter of law that there was no delivery of the deeds involved in the transaction, and no finding was made upon that issue, therefore this court cannot base a decision upon the nondelivery of the deeds.

Action in the district court for Dakota county to cancel certain deeds and mortgages and the record of the same in the office of the register of

[1]Reported in 160 N. W. 769.

Note.—For authorities passing on the question of burden of proof as to undue influence respecting gifts *inter vivos* from parent to child, see note in 35 L.R.A.(N.S.) 944.

deeds for that county. The answer specifically denied that the deeds were procured from Mary Shaughnessey by fraud or undue influence. The case was tried before Converse, J., who at the close of the testimony denied plaintiffs' motion for a directed verdict, and a jury which returned a negative answer to the question whether Mary Shaughnessy had sufficient mental capacity to execute the deeds, and an affirmative answer to the question whether they were executed as the result of undue influence. The court made findings and ordered judgment in favor of plaintiffs. Defendants' motion for judgment notwithstanding the decision or for a new trial was denied. From the order denying their motion to amend the findings and order judgment notwithstanding the decision or for a new trial, defendants appealed. Reversed.

*Kueffner & Marks,* for appellants.

*Thomas C. Daggett,* for respondents.

HOLT, J.

Both sides plead that on October 28, 1912, Mary Shaughnessy owned a 240-acre farm in Dakota county, this state. On that date, and nearly two years before her death when about 80 years old, she concluded to give it to her children. To accomplish her purpose she engaged an attorney to draw the deeds and directed him what land to include in each. The deeds were to be recorded by him after her death, unless she during her lifetime directed him to record them. The deeds were drawn, and signed and acknowledged by her. The one deed conveyed 90 acres to the four plaintiffs, and the other conveyed the balance, or 150 acres, to the two defendants. It is estimated that by this division the equity above the encumbrances that each plaintiff would receive would be about $1,100, while that of each defendant would be over $5,000. This action was brought to set aside the deed to defendants, on the ground that the grantor was incompetent mentally to transact business at the time the deed was executed, and, secondly, that it was procured through undue influence brought to bear upon the grantor by the defendants and inducing her to act. The verdict of a jury upon both issues was in favor of plaintiffs. The court embodied the verdict in the findings and ordered judgment for plaintiffs. From the order denying defendants' motion to

amend the findings of fact and conclusion of law and denying a new trial, this appeal is taken.

It is impossible to escape the conclusion, after reading the record, that the finding of the court and jury to the effect that Mary Shaughnessy did not have sufficient mental capacity to execute the deeds is not sustained by the evidence. There was some testimony to the effect that advancing old age made Mrs. Shaughnessy feeble physically and mentally during the last few years of her life. The deed, however, was executed nearly two years before she died. There is no suggestion that she then, or at any time subsequent, did not know what property she owned, or who her children were, their circumstances or their claim upon her bounty—taking the trial court's view that the deeds were to be in the nature of a division of her possessions. A person afflicted with the infirmities of age is not precluded from transacting business or conveying property because the intellect is not as keen as it once was. That in an old person there may be occasional lapses of memory as to recent events, or an easy wandering from subject to subject in ordinary, everyday conversations with friends and acquaintances, does not signify that, when a matter of business of importance is undertaken, the faculties will not readily respond so that it is done rationally according to the free choice of such person.

But upon the issue of undue influence the evidence is such that we cannot disturb the finding except for prejudicial error in its submission. The jury in determining whether undue influence was used were entitled to consider that Mary Shaughnessy's mental faculties were not as keen as formerly, and therefore more susceptible to yield to undue influence. Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287. The evidence shows that some 9 years before the transaction in question she made her will devising her property in equal shares to her children, except her daughter Bridget, who was to receive $300 more than the others, and $400, which was left to a grandson who had lived with her 5 or 6 years when he was small. She had stated to others that she intended the children to share equally in what she had. For the 5 or 6 years next prior to her death defendants had attended to all business connected with the farm. During that time Mrs. Shaughnessy lived with her daughter Mrs. Davern; but defendant Bridget also lived there, occupying a room with

her mother. Bridget had access to the papers of her mother. Until the deed transaction, Bridget paid for her mother, and as a rule from the income of this farm, $15 a month board to Mrs. Davern. A month or so after the signing of the deeds payments for board ceased, and no explanation was made to Mrs. Davern. On October 28, 1912, Bridget took her mother to the home of the other defendant on the occasion of the christening of his infant child. The next day at noon Bridget went to get her mother, but they stopped down town at the office of an attorney, with whom Bridget had previously made the appointment, to have the two deeds signed and acknowledged by her mother. The business done they repaired to Mrs. Davern's home. The other defendant knew that business was to be transacted at the lawyer's and within a few days Bridget informed him fully of the transaction, but not a word was said to Mrs. Davern or any of the other plaintiffs. They never knew anything about the deeds until about 4 months after the mother's death. The deeds were not recorded until after Mrs. Shaughnessy's death. Bridget paid the taxes so they could be recorded, but she asked for no contribution from plaintiffs, nor did she inform them of the fact. Taking these and other circumstances disclosed by the record into consideration the jury could come to the conclusion that undue influence exerted by defendants caused the mother to attempt the unequal division by the deeds of October 28, 1912. Circumstantial evidence is in many cases the only proof available to establish undue influence. Graham v. Burch, 44 Minn. 33, 46 N. W. 148; Prescott v. Johnson, 91 Minn. 273, 97 N. W. 891.

We must now determine whether errors, relating to the trial of this issue occurred of such a character as to require a new trial. It appears that the case has been twice tried. At the first trial the court sitting without the aid of a jury decided in favor of plaintiffs. A new trial was granted and a jury was called in as herein stated. No rulings upon the admission or exclusion of evidence upon the issue of undue influence call for discussion. The errors, if any, relate to the charge. The charge as a whole is clear, fair and to the point, and is open to attack in two places only.

It is stated that the court was of the erroneous opinion that Mrs. Shaughnessy by these deeds attempted a testamentary disposition of her

property, and so charged the jury. If this were so the deeds did not accomplish the object sought, for they were not executed with the formality required in wills. But we think appellant misapprehended the attitude of the court. In the charge the court said: "I think it also fairly appears from the evidence that the transaction here in question was an attempted distribution of her estate among those who were to have it after her death; in other words it was a final distribution of her estate." One may distribute his estate while living, whether it be real or personal property, though reserving therein a life estate. Ekblaw v. Nelson, 124 Minn. 335, 144 N. W. 1094. If no question remained in this case of undue influence, or of the fact that the deeds were irrevocably delivered to a third person, by him to be delivered to the grantees upon the death of the grantor, no doubt the title would vest in the grantees in accord with the tenor of the deed. Dickson v. Miller, 124 Minn. 346, 145 N. W. 112.

The jury were instructed:

"The burden of proof is upon the plaintiffs to prove the existence of undue influence, except in one case, and that is this: If you find and believe from the evidence that confidential relations existed between the said Mary Shaughnessy and any of her children at the time of the execution of said deeds, and that such relations had existed for some time before the execution of said deeds, and that such child or children had looked after or had charge of her business affairs for some time, and that the said Mary Shaughnessy relied upon said child or children in all her business affairs, and for counsel and advice, and that such child or children are the largest beneficiaries under such deeds, then and under those circumstances, if you so find, a presumption of undue influence arises and the burden then shifts and it devolves upon such child or children to show that such deeds were free from undue influence, and that such deeds were the free and voluntary act of the said Mary Shaughnessy."

In McEleney v. Donovan, 119 Minn. 294, 138 N. W. 306, where a conveyance from father to daughter was attacked upon the same grounds as here, the court was requested to instruct the jury that if they found that a relationship of confidence and trust existed between the father and daughter, then the burden would fall on the latter to show that she took

no advantage of the father in her own interest, counsel contending therein that certain proven facts and circumstances shifted the burden of proof from the plaintiff to the defendants. We held that the court did not err in refusing the requested instruction. The deed to defendants was a gift; and, as such, being from parent to children the courts will scrutinize the circumstances of the transaction, "but the presumption is in favor of its validity, and in order to set it aside on the ground of undue influence the court must be satisfied that it was not the voluntary act of the donor; the burden of establishing such fact being upon the party contesting the gift." Rader v. Rader, 108 Minn. 139, 121 N. W. 393. While proof of confidential relationship under certain circumstances gives rise to a presumption, or more accurately, perhaps, to an inference of undue influence exerted by the one benefited by the transaction, we take it the jury is not compelled to accept the presumption or inference as sufficient to establish undue influence as a fact. Hence the court should not instruct that the mere coming into play of an evidentiary presumption, which may or may not be accepted by the jury, shifts the burden of proof from the party upon whom it is placed by the general rules of practice. 1 Dunnell, Minn. Digest, § 3431, states: "So-called presumptions of fact are not 'rules of law' at all, but are mere logical inferences which a court or jury may draw, but is not bound to draw. They do not make out a *prima facie* case or shift the burden of proof, as presumptions of law do." We think the instruction erroneous, for which a new trial should be had, unless the contention of respondents can be sustained that there was no delivery of the deeds.

Counsel for respondent contends the instruction was correct, relying upon Davis v. Dean, 66 Wis. 100, 26 N. W. 737, a case tried to the court, where, upon the facts there disclosed, it was stated: "Because of the suspicious circumstances under which the conveyances were made, and the injustice which would be inflicted upon the heirs of the grantor, if the conveyances were held valid, the law cast upon the grantee the burden of showing that the conveyances are untainted with undue influence, or other fraud, but were the intelligent and deliberate acts of the grantor." In Winn v. Itzel, 125 Wis. 19, 103 N. W. 220, where the trial judge ruled that at one point in the evidence the burden of proof shifted to the grantees to show the absence of undue influence, Justice Winslow examines

the case of Davis v. Dean very fully and concludes that it did not lay down a rule of practice under which the burden of proof shifts at intervals during the trial; and speaking of the ruling of the trial court in the case before him the justice proceeds: "So the practice which seems to have been adopted in the instant case, by which the plaintiff introduced a part of his proof and then insisted that the burden of proof had been arbitrarily shifted to defendant's shoulders and must be accepted by him, notwithstanding the plaintiff had the affirmative evidence still in reserve, cannot be approved. The burden of proof does not play hide and seek in this way in a fraud case any more than in any other case." This ruling was approved in Boyle v. Robinson, 129 Wis. 567, 109 N. W. 623.

Plaintiffs claim that as a matter of law there was no delivery of the deeds so as to pass title. There were two witnesses for defendants concerning what took place when the deeds were signed. The one was the attorney who directed the drafting of the deeds and to whom they were delivered, or to whose possession they were entrusted, and the other was Bridget. According to Bridget's testimony Mrs. Shaughnessy retained the right to make changes during her lifetime. This clearly, under Wortz v. Wortz, 128 Minn. 251, 150 N. W. 809, would be an attempted testamentary disposition and ineffective. With the understanding on the part of Mrs. Shaughnessy that she might make such changes in the disposition of the property as she might desire, it could not be considered that the temporary handing of the deed to Bridget, and she handing it back to her mother, or to the attorney for him to keep, constituted a delivery. No doubt it was intended that both deeds should take effect or else neither. The attorney would, under those circumstances, have the custody of the deeds merely as an agent of the grantor, and upon her death the agency terminated so that no delivery could be made thereafter. But under the testimony of the attorney an irrevocable delivery could be found. He brings the case squarely within Dickson v. Miller, 124 Minn. 346, 145 N. W. 112. Under this situation we are not justified in holding as a matter of law that there was no delivery. No finding was made upon the issue of delivery. A finding either way upon this record could not be disturbed.

Our conclusion is that for the error in the charge a new trial must be had. Order reversed.

Mr. Justice Schaller did not sit in the case.