Lawrence ZIRINSKY, Appellant,

v.

James L. SHEEHAN, John D. Sheehan
and Brooklyn Center Industrial
Park, Inc., Appellees.

No. 19353.

United States Court of Appeals
Eighth Circuit.

July 14, 1969.

Rehearing Denied Aug. 11, 1969.

Bernard G. Heinzen, of Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., for appellant, John W. Windhorst, Jr., and William B. Payne, Minneapolis, Minn., on the brief.

Joe A. Walters, of O'Connor, Green, Thomas, Walters & Kelly, Minneapolis, Minn., for appellees, Harold J. Soderberg and John F. Casey, Jr., Minneapolis, Minn., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and LAY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

This diversity action[1] arises out of an agreement for the purchase of land whereby plaintiff Lawrence Zirinsky agreed to purchase from defendant Brooklyn Center Industrial Park, Inc. [hereafter BCIP] 560 acres of real estate called the Earle Brown Farm which is located in Brooklyn Center, Minnesota. Defendants Sheehans, shareholders and officers of BCIP, executed the agreement on its behalf.[2]

Under the purchase agreement Zirinsky agreed to pay $2,750,000 for the property as follows: (1) a down payment of $50,000 on March 23, 1967, the date of the contract; (2) an installment of $225,000 on April 6, 1967; (3) an additional installment of $225,000 on May 8, 1967; (4) a final cash installment of $850,000 on August 8, 1967; and then (5) $1,400,000 by taking subject to an existing purchase money mortgage in favor of the Regents of the University of Minnesota dated May 20, 1966.[3] As the buyer, Zirinsky also agreed to pay all real estate taxes for 1968 and subsequent years, and to pay $339,041 in special assessments against the real estate. In addition, he agreed to pay any 1967 real estate tax which might be determined to be due and owing in a pending litigation. The agreement provided that if Zirinsky defaulted in performance of any of his agreements, BCIP could elect to terminate the contract and to retain all payments made by Zirinsky as liquidated damages. Zirinsky was not to obtain possession and title to the property until payment of the final cash installment on August 8, 1967.

Contemporaneous with the execution of the purchase agreement, defendants Sheehans individually entered into a memorandum agreement with Zirinsky to form a new corporation. It was agreed that a majority of the stock of the proposed corporation would be owned by Zirinsky, with the Sheehans receiving a minority of the shares. This agreement anticipated that the new corporation would be organized to obtain one or more loans, the proceeds of which would be used to purchase the real estate from Zirinsky in the name of the corporation. The parties intended to de-

---

1. This Court's original opinion dated March 12, 1969, is withdrawn and the judgment entered on that date is hereby ordered vacated.

2. Defendants Joseph E. Muscarelle and Jos. L. Muscarelle, Inc. are joined only as nominal defendants.

3. Early in 1966 the Sheehans had individually agreed to purchase the Earle Brown Farm from the Regents of the University of Minnesota for $1,700,000. They paid $25,000 at the execution of the agreement. The Regents delivered a warranty deed to the Earle Brown Farm dated May 20, 1966. At that same time, the Sheehans paid the Regents $275,000 and delivered a promissory note for $1,400,000 payable to the Regents in three equal installments on September 1, 1967, 1968 and 1969. This note was secured by a purchase money mortgage. The Sheehans subsequently transferred the farm to BCIP, subject to the $1,400,000 purchase money mortgage.

velop the real estate for industrial, commercial and residential purposes. Zirinsky agreed to obtain the financing.

Zirinsky made the down payment and the first two installments under the purchase agreement totaling $500,000, half of the money being provided by defendants Joseph L. Muscarelle and Jos. L. Muscarelle, Inc. He was, however, unable either to obtain financing under the pre-incorporation agreement or to pay the final installment of $850,000 under the purchase agreement. BCIP therefore notified Zirinsky of its intention to cancel the purchase agreement and to retain the $500,000 he had already paid.

Zirinsky then brought this suit seeking to have the contract reformed, or in the alternative to have the liquidated damages provision declared invalid as a penalty, to have the notice of termination declared ineffective, or in the alternative to rescind the contract because of breach by BCIP, or alternatively damages by reason of the defendants' unjust enrichment. The trial court held for defendants on all issues.

It is urged by plaintiff Zirinsky that the purchase agreement of March 23, 1967, was an equitable mortgage rather than a contract to convey real estate; that all of the surrounding circumstances establish as a matter of law that Zirinsky and his associate, Muscarelle, were merely loaning funds for the payment of expenses by BCIP and the Shee-

hans in acquiring the property; that the whole operation was a joint venture pending formation of a new corporation and that the property was being purchased not for Zirinsky but in fact for the benefit of all the promoters of the new corporation. Alternatively, it is urged that if the purchase agreement be construed as a contract for purchase, the notice of termination was ineffective, since it was not in compliance with Minnesota Statute § 559.21 requiring notice to be given Zirinsky's co-vendee or assignee, Muscarelle. In addition, it is claimed that the defendants breached their agreement with Zirinsky by concealing possible land sales to third parties; that the defendants were not in good faith; that they made Zirinsky's performance impossible. Finally, it is claimed that the judgment should be set aside since the forfeiture provision of the contract constituted a penalty rather than an enforceable liquidated damage clause under Minnesota law.

■■■ We have thoroughly examined the record and are satisfied that there exists sufficient evidence to sustain the trial court's findings (1) that the March 23, 1967, instrument is unambiguous and clearly purports to be and is a purchase agreement by Zirinsky to purchase the real estate in question;[4] (2) that the defendants were not put on notice that Muscarelle in fact had an interest as a co-vendee or assignee at the time of the

4. The evidence is undisputed that the parties originally planned to have Zirinsky arrange financing for the payment of the full purchase money mortgage of $1,400,000 to the Regents, as well as an additional $1,300,000 to cover the Sheehans' costs and interest. Within this figure was a profit to the Sheehans, after payments of loans and other expenses, in excess of $400,000. Zirinsky and his nominees were to have a 60% interest in BCIP. Prior to any such final agreement the parties met with their attorneys on March 23, 1967, and because of the concern over possible hidden liabilities of BCIP and the proposed broad indemnity clause running to Zirinsky, the parties reached a *mutual* decision to enter into a new arrangement. This arrangement was suggested by Mr. Kittler, Sheehans' attorney, who proposed the formation of a "new corporation" which in turn would buy the land from Zirinsky after Zirinsky had in fact purchased the land from BCIP. This was done to shield the new corporation from any hidden liabilities of BCIP and accordingly to offer protection as well to Zirinsky as a bona fide purchaser of the land. Zirinsky's argument that the contract of purchase was a "sham" is not convincing. The law must presume the parties contracted to give legal effect to their lawful actions. To hold otherwise, a party's legal obligation would always depend upon his *post hac* aspirations rather than his prefixed intentions.

termination notice, and that the notice given by the defendants was in full compliance with Minnesota law (see Larson v. Johnson, 175 Minn. 502, 221 N.W. 871 (1928)); and (3) that plaintiff was not entitled to rescind and recover his payments by reason of any conduct by BCIP or Sheehans.

We turn now to the difficult issues relating to damages. The trial court found that the liquidated damages clause was valid and alternatively that defendant had failed to prove unjust enrichment. We find that in view of the cancellation notice served and the belated claim by the vendor of statutory forfeiture, it is unnecessary to reach the question of the validity of the liquidated damages clause.[5] Section 559.21 of the Minnesota statutes provides:

"When default is made in the conditions of any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same, he may do so by serving upon the purchaser, his personal representatives or assigns, either within or without the state, a notice specifying the conditions in which default has been made, and stating that such contract will terminate 30 days after the service of such notice unless prior thereto the purchaser shall comply with such conditions and pay the costs of service. Such notice must be given notwithstanding any provisions in the contract to the contrary * * *."

The Minnesota cases dealing with forfeiture of monies by defaulting vendees cover more than half a century. These cases can be generally categorized:

(1) Forfeitures of down payments or earnest monies, see, e.g., Miller v. Sne-deker, 257 Minn. 204, 101 N.W.2d 213 (1960) (a vendee who defaults in the payments due under an executory land contract is not entitled "to a return of *a payment made when the contract was entered into*"); Monahan v. Addy, 176 Minn. 50, 222 N.W. 288 (1928); Nelson Real Estate Agency v. Seeman, 147 Minn. 354, 180 N.W. 227 (1920); Grant v. Munch, 54 Minn. 111, 55 N.W. 902 (1893); Johnston v. Johnson, 43 Minn. 5, 44 N.W. 668 (1890). Forfeiture of down payments by a defaulting vendee is generally recognized throughout the common law of vendor-purchaser relationships. See Restatement, Contracts § 357; see also Corbin, "The Right of a Defaulting Vendee to the Restitution of Installments Paid," 40 Yale L.J. 1013 at 1028.

(2) Cases involving forfeiture of both down payment and installment payments over a period of time are found in:

(a) Actions seeking damages or set off against the purchase price arising out of the alleged fraud of the vendor, see, e.g., West v. Walker, 181 Minn. 169, 231 N.W. 826, 74 A.L.R. 165 (1930); Follingstad v. Syverson, 160 Minn. 307, 200 N.W. 90 (1924); Olson v. Northern Pac. Ry., 126 Minn. 229, 148 N.W. 67 (1914); International Realty & Securities Corp. v. Vanderpoel, 127 Minn. 89, 148 N.W. 895 (1914); and

(b) Suits for rescission arising from alleged fraud of the vendor where *all monies paid in are attempted to be recovered*, see, e.g., Miller v. Snedeker, supra; Northwest Hotel Corp. v. Henderson, 257 Minn. 87, 100 N.W.2d 493 (1960); Cady v. Bush, 166 N.W.2d 358 (Minn. 1969).

The cases are clear that once statutory notice has been served and cancellation effected, *all rights under the contract* are terminated.[6] Under

---

5. The trial court did not pass upon the issue of statutory forfeiture since *appellee did not raise the claim below*. However, the rule is well established that "if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937).

6. In Olson v. Northern Pac. Ry., 126 Minn. 229, 148 N.W. 67, 68 (1914), the court said:
 "Defendant [vendor] cannot now enforce the payment of the purchase price for this land. * * * *And it ought also to follow that plaintiff [vendee] has no contract upon which to predicate damages.* * * * It would seem to fol-

Minnesota law this cuts off the vendor's right to seek specific performance, Olson v. Northern Pac. Ry., 126 Minn. 229, 148 N.W. 67, 68 (1914) (dictum); his right to obtain judgment for installments due, Smith v. Dristig, 176 Minn. 601, 224 N.W. 157 (1929); and his right to enforce an unsatisfied pre-cancellation judgment against the vendee for unpaid installments, Des Moines Joint-Stock Land Bank v. Wyffels, 185 Minn. 476, 241 N.W. 592, 593 (1932); Warren v. Ward, 91 Minn. 254, 97 N.W. 886 (1904).

Of course, the cancellation also affects the vendee's rights. After the thirty-day period the vendee can no longer redeem, International Realty & Securities Corp. v. Vanderpoel, 127 Minn. 89, 148 N.W. 895 (1914); nor can he attempt to affirm the contract and sue for damages based upon fraud, West v. Walker, 181 Minn. 169, 231 N.W. 826, 74 A.L.R. 165 (1930); Olson v. Northern Pac. Ry., 126 Minn. 229, 148 N.W. 67 (1914).

The rationale behind these rules is that the contract is no longer in existence and that any cause of action *based upon the contract itself* has been terminated. 148 N.W. at 68. Thus, vendees have sought injunctive relief to prevent service of the cancellation notice or to toll the running of the period of redemption pending the outcome of a contractual action against the vendor. Vendees have hoped thereby to protect their rights later to redeem and reinstate the contract if their suit for rescission should fail, or to reinstate the contract and then sue for fraud to apply damages against their purchase price. See, Northwest Hotel Corp. v. Henderson, 257 Minn. 87, 100 N.W.2d 493 (1960); Follingstad v. Syverson, 160 Minn. 307,

200 N.W. 90 (1924); Freeman v. Fehr, 132 Minn. 384, 157 N.W. 587 (1916). However, it is clear once the thirty-day period of redemption has run, these contractual rights cease to exist. None of these cases foreclose a vendee's suit for unjust enrichment.

In the instant case, the vendor attempted to justify at trial the retention of the monies paid in by reason of the liquidated damages clause of the contract. This was in defense of the vendees' initial attack that the clause was void as a penalty. Nostdal v. Morehart, 132 Minn. 351, 157 N.W. 584, 585 (1916); Costello v. Johnson, 265 Minn. 204, 121 N.W.2d 70 (1963).

However, statutory notice of cancellation once served and effected constitutes an election by the vendor as to the rights he chooses to pursue upon the vendee's default. It not only brings the contract to an end, but it also terminates his rights to sue for general damages at common law. See West v. Walker, 181 Minn. 169, 231 N.W. 826, 827 (1930). And conversely, once a vendor chooses to pursue his common law action for damages he cannot later effect cancellation by statutory notice. Liebsch v. Abbott, 265 Minn. 447, 122 N.W.2d 578 (1963).

In Minnesota, as elsewhere, a provision for liquidated damages is generally held to be a convenient substitute as a reasonable forecast of general damages. See Schommer v. Flour City Ornamental Iron Works, 129 Minn. 244, 152 N.W. 535 (1915). It must logically follow once statutory cancellation has been effected it constitutes an election by the vendor to forego his right of action for liquidated damages under the

low that the contract being canceled, and the property still in the seller, there is no basis upon which to compute damages in this action." (Emphasis ours.) See also West v. Walker, 181 Minn. 169, 231 N.W. 826, 827 (1930), where the Minnesota court added:
"We think the instant case is not distinguishable from *Olson* * * * where it was held that a right of action for

damages for fraudulent representations inducing the purchase of land upon an executory contract does not survive the cancellation of the contract. * * * When the cancellation is completed, there remains to neither vendee nor vendor any cause of action against the other growing out of the land transaction * * *."

contract as well as for general damages. Thus a vendor who sustains actual damages of $10,000 upon a vendee's default when only $1,000 has been paid in on the contract, would have a right to greater damages at common law than he would receive by claim of forfeiture under statutory cancellation. The same would be true if in fact a liquidated damages clause reflected similar damages ($10,000), since forfeiture proceedings would constitute an election and cut off all rights to sue for general damages whether they are provided by stipulation or not. Cancellation is held to be a cumulative remedy, not exclusive. Kirk v. Welch, 212 Minn. 300, 3 N.W.2d 426, 430 (1942); State Bank of Milan v. Sylte, 162 Minn. 72, 202 N.W. 70, 71 (1925).

We conclude that since the statutory notice was properly served and effected here prior to the vendee's suit, the vendor's rights must be determined under the statutory cancellation and not under the liquidated damages clause. Under these circumstances, we do not need to pass upon the validity of the liquidated damages clause since statutory cancellation having been effected, the stipulation for damages cannot affect the rights of the parties involved.

 The issue thus becomes whether statutory cancellation upon a vendee's default totally precludes his recovering back any of the monies paid before defaulting on a theory of unjust enrichment (money had and received). The defendant argues that under Minnesota law, no cause of action lies for unjust enrichment when brought by a defaulting vendee after statutory cancellation.

We disagree.

Initially, it is significant we think that Minnesota law has continually recognized throughout its history an abhorrence of forfeiture. In Costello v. Johnson, 265 Minn. 204, 121 N.W.2d 70, 76 (1963), the Minnesota court said:

"[I]n case of breach of a contract for sale of real estate, whether or *not* there is a contractual provision for liquidated damages, the law adopts as its guiding principle 'that the injured party is entitled to receive a fair equivalent for the actual damages necessarily resulting from failure to perform the contract and no more.' Gorco Construction Co. v. Stein, 256 Minn. 476, 482, 99 N.W.2d 69, 74." (Emphasis ours.)

The Minnesota Supreme Court, dealing with real estate contracts in Blunt v. Egeland, 104 Minn. 351, 116 N.W. 653, 654 (1908), stated "if the damages stipulated are out of all proportion to the actual injury suffered by plaintiff, the stipulation should be treated as a penalty, and plaintiff limited to the recovery of actual loss." In Ballard v. Friedman, 151 Minn. 493, 187 N.W. 518, 520 (1922), the court noted "the reluctance of courts to place a construction on a contract which will enable a vendor to exact a forfieture from a vendee for a failure to make a payment at the very hour stipulated." And in Needles v. Keys, 149 Minn. 477, 184 N.W. 33, 34 (1921), the court stated that the forfeiture statute is "to be strictly construed for the purpose of avoiding a forfeiture." [7]

7. Significantly, we think, in *Miller*, supra, 101 N.W.2d at 224 n. 6, the Minnesota Supreme Court made reference to § 357 of the Restatement of Contracts and "especially" the two contrasting situations given as illustrating examples.

"6. A contracts for the sale of land to B for $5000, of which $500 is paid in advance, the balance to be paid in one year on delivery of deed. It is agreed that, on a subsequent total breach by B, the advance payment may be retained by A as liquidated damages. B commits such a total breach, the amount of A's harm being uncertain and not accurately measurable. B has no right to restitution of any part of the $500 paid.

"7. A contracts for the sale of land to B for $5000, payable in five annual instalments. It is provided that time shall be of the essence and that, upon any default, A may declare the contract terminated and may retain all instalments paid. After B has paid $4000, he is unable to make the fifth payment on time. Upon B's default, A at once gives notice that the contract is terminated,

We also think it revealing that the Minnesota courts have refused to enforce stipulated damages provisions providing for forfeiture of all monies paid in on a contract, holding them to constitute a penalty clause. In Gorco Constr. Co. v. Stein, 99 N.W.2d at 74, the Supreme Court of Minnesota stated:

> "The controlling factor, rather than intent, is whether the amount agreed upon is reasonable or unreasonable in light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances. * * * Punishment of a promisor for breach, without regard to the extent of the harm that he has caused, is an unjust and unnecessary remedy and a provision having an impact that is punitive rather than compensatory will not be enforced."

In Schommer v. Flour City Ornamental Iron Works, 152 N.W. 535, 536 (Minn. 1915), the court said:

> "The law adopts as its guiding principle that the injured party is entitled to receive a fair equivalent for the actual damages necessarily resulting from failure to perform the contract and no more."

In Goodell v. Accumulative Income Corp., 185 Minn. 213, 240 N.W. 534, 537 (1932), the court stated:

> "The character of the contract is an important factor to be considered in the case. *It is not like a contract for the sale of real property where the buyer goes into possession and has the use or income from the property * * *. In the sale of real estate, the seller loses the use and income therefrom so long as the contract remains in force. * * * [T]he longer the contract remains in force the greater the seller's damage may be.* It is not so

where the buyer simply deposits or pays money to a seller of such a contract as we have here. In that case, the longer the contract is kept up by payments the greater the benefit to the seller. For that reason the sellers of such contracts should be held to a stricter accountability for the money received by them." (Emphasis ours.)

In view of the above discussion, it would be anomalous to say that Minnesota law could at the same time condone a penalty of total forfeiture by simply allowing a vendor to follow a different procedure for cancelling a contract.

The basic rationale underlying statutory cancellation did not relate to damages. This statute was early explored in Graceville State Bank v. Hofschild, 166 Minn. 58, 206 N.W. 948, 949–950 (1926), where the court stated:

> "We think the statute applies to all executory contracts for the sale of real estate which, under the law as it existed prior to the enactment of the statute, the vendor had the right to terminate by his own act for the default of the vendee. Under the prior law, if time was made of the essence of the contract and the vendee failed to perform at the stipulated time, the vendor could forfeit the contract without notice. Dunnell, Minn.Dig. & Supps. § 10033; 39 Cyc. 1369. If time was not of the essence of the contract, the vendor could notify the vendee to perform, allowing a reasonable time therefor, and, if the vendee failed to perform within the time specified, the vendor could then cancel the contract. * * *
>
> "The statute takes from the vendor in all cases the arbitrary power to terminate the contract without notice. It prescribes the character of the notice and requires it to be given in all cases; and also prescribes the manner in

resumes possession of the land, and sells it to C for $6000. In an action for restitution, B proves that A has suffered no harm other than deprivation of rent.

B can get judgment for $4000, less the value of the use and occupation enjoyed by him."

which it shall be served, and the time within which the vendee must either perform or permit the contract to lapse. It had a double purpose—to ameliorate the harsh rule of the common law, and to remove grounds for controversy or dispute. To accomplish this latter purpose, it provided, among other things, that a vendor who had the right to terminate a contract and wished to do so must follow the prescribed procedure in all cases. He cannot terminate any contract for the sale of real estate in any other manner by his own act. The statute does not take away the right to terminate contracts in any case, nor purport to do so, but only regulates the manner of exercising that right. And we think the Legislature manifestly intended the statute to apply in all cases where the vendor has that right whatever the form of the contract."

Notwithstanding cancellation by a vendor, the Minnesota Supreme Court has repeatedly recognized actions based upon a theory of unjust enrichment in real estate contracts. See, e.g., Cady v. Bush, 166 N.W.2d 358 (Minn.1969); Gable v. Niles Holding Co., 209 Minn. 445, 296 N.W. 525 (1941); West v. Walker, 231 N.W. 826, 827 (Minn. 1930) (dictum).

In Olson v. Northern Pac. Ry., 148 N. W. at 69, it was observed:

"Had plaintiff sought to recover only the money paid on the contract tainted by defendant's fraud, it might have been accomplished by an action at law for money had and received, *notwithstanding defendant's cancellation of the contract.*" (Emphasis ours.)

These cases have been likened to and in effect are suits for rescission based upon fraud in the inducement of the contract. However, of importance here, we think, is not their factual difference or theory, but the recognition by the Minnesota courts that cancellation *per se*

does not prevent a suit for unjust enrichment on executory real estate contracts in Minnesota. The reasoning is clear: an action for unjust enrichment (money had and received) is not based upon any cause of action arising out of or under the contract. An action for unjust enrichment does not depend upon the contractual agreement of the parties but is based upon unconscionable gain by one party over another. It is a quasi contractual agreement implied by law. The basic theory of unjust enrichment was early explained by the Minnesota Supreme Court in Todd v. Bettingen, 109 Minn. 493, 124 N.W. 443, 444–445 (1910), where it stated:

"The fundamental theory of this action [unjust enrichment] is nowhere better stated than by Lord Mansfield. We quote his views at some length, because of the misapprehension of the nature of the action which has appeared from time to time in arguments before this court. In Moses v. McFarland, 2 Burrows' Reports, 1005, at page 1012, he says: 'This kind of equitable action, to recover back money, which ought not in justice to be kept, is very beneficial, and therefore much encouraged. It lies only for money which, ex aequo et bono, the defendant ought to refund; it does not lie for money paid by the plaintiff, which is claimed of him as payable in point of honor and honesty, although it could not have been recovered from him by any course of law, as in payment of a debt barred by the statute of limitations, or contracted during his infancy, or to the extent of principal and legal interest upon an usurious contract, or for money fairly lost at play, because in all these cases the defendant may retain it with a safe conscience, though by positive law he was barred from recovering. But it lies for money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition (ex-

press or implied), or extortion, or oppression, or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances. In one word: The gist of this kind of action is that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money. * * *'

"Even at common law the remedy was considerably extended, and its further extension commended. In Langshamp v. Kelly, 1 Douglas, 137, Lord Mansfield said: 'Great benefit arises of a liberal extension of the action of money had and received, because the charge and defense in this kind of action are both granted on the truth and equity and circumstances of the case.'"

See also Cady v. Bush, 166 N.W.2d 358 (Minn.1969); Heywood v. Northern Assur. Co., 133 Minn. 360, 158 N.W. 632, 633–634 (1916). And see 5 Williston, Contracts §§ 1473 and 1476 (Rev.ed. 1937); Restatement, Contracts § 357; Restatement, Restitution § 1. Under these circumstances we conclude that statutory cancellation does not bar a suit for unjust enrichment in Minnesota.

We move then to the primary issue here: whether the plaintiff has proved that defendant would be unjustly enriched if he were allowed to retain the monies which plaintiff had advanced prior to default? The trial judge made a specific finding that plaintiff failed to prove unjust enrichment.

In examining the record we find there exists no evidence of value of the land *on the date of plaintiff's breach*. Plaintiff's *only* effort to show damage is to negate by contrary testimony defendant's evidence of special damage. Plaintiff has made no showing of the value of the land on the date of breach. This directly raises the question as to whether under Minnesota law a plaintiff suing *for* unjust enrichment has the burden of proof to establish his damage.

The Restatement of Contracts, § 357, comment g states:

"The plaintiff's right to restitution is merely to the excess of benefit received over the harm suffered. It is necessary for the plaintiff to show with a reasonable degree of certainty that there is such an excess and its amount, in order to get judgment." See also 58 C.J.S., Money Received § 31 (1948). Minnesota law is again not clearly expressed. However, we conclude that a defaulting vendee's action for unjust enrichment necessarily carries the burden of affirmative showing of the vendor's alleged excess of rightful damage. The Minnesota court has stated: "The theory of unjust enrichment is based on what the person allegedly enriched has received, not on what the opposing party has lost." Georgopolis v. George, 237 Minn. 176, 185, 54 N.W.2d 137 (1952). In the recent Cady v. Bush case, the Minnesota court recognized that:

"[T]he theory of unjust enrichment, which theory 'is founded on the principle that no one ought unjustly to enrich himself at the expense of another, and the gist of the action is that the defendant has received money which in equity and good conscience should have been paid to the plaintiff, and under such circumstances that he ought, by the ties of natural justice, to pay over.' * * * The theory of unjust enrichment or money had and received has salutary and beneficial uses and has been invoked in support of claims based upon failure of consideration, fraud, mistake, and in other situations where it would be morally wrong for one party to enrich himself at the expense of another." 166 N. W.2d at 361.

Minnesota law on the general burden of proof in all cases is early reflected in McEleney v. Donovan, 119 Minn. 294, 138 N.W. 306, 308 (1912):

"The fact is, the burden in every case rests on the litigant who has the affirmative of an issue to prove it; otherwise, his opponent wins."

See also Agner v. Bourn, 281 Minn. 385, 161 N.W.2d 813, 818–819 (1968); Shaughnessy v. Shaughnessy, 135 Minn. 262, 160 N.W. 769, 770–771 (1916).

█ It becomes incumbent upon a plaintiff to show that the monies retained by the defendant are *wrongfully* held. If the vendee does not show the excess of vendor's actual damage, in view of the rules surrounding statutory forfeiture the vendee has not established a violation of any legal right. In Cady v. Bush, supra, the court made it clear the vendee had the burden of showing the fraud to receive back his whole purchase price. In the instant case in order to establish any actionable wrong the defaulting vendee must show he is entitled to a sum in excess of defendant's actual damage. His failure to do so in no way creates a burden on the defendant to show otherwise. The evidence is clear that plaintiff failed to prove any unjust enrichment to the defendant.[8] Judge Nordbye so found.[9]

We affirm.

Judgment affirmed.

8. In a similar situation, the Supreme Court of California recognized the right of a defaulting vendee to seek recovery after cancellation on a theory of unjust enrichment. As here, the court was nonetheless required to deny relief to the vendee because of his failure to prove that the vendor had been unjustly enriched by exercising his right of forfeiture. See Baffa v. Johnson, 35 Cal.2d 36, 216 P.2d 13 (1950).

9. An attempt to recover on a theory of unjust enrichment also presents the question of the effect of a "wilful" default by the vendee. Cf. Marsh v. Minneapolis Herald, Inc., 270 Minn. 443, 134 N.W.2d 18, 22 (1965).

The rule of forfeiture first established in Minnesota recognized that a party making an "inexcusable default" cannot maintain an action to recover money so paid. McManus v. Black Marr, 47 Minn. 331, 50 N.W. 230 (1891). By reasonable implication, at least, "excusable default" may exist under Minnesota law. This view is adopted by the Restatement, Contracts, § 357 comment e:

"One who is sued for damages is required to pay no more than just compensation, making due allowance for

benefits received by the injured party, even though his breach is wilful and deliberate; but one who sues for restitution of value that he has given in part performance can recover none of it if his breach is wilful and deliberate, except to the extent indicated in Clause (b). A breach may be committed knowingly and yet not be wilful and deliberate. Such is the case if it is the result of mere negligence or error of judgment or mistake of fact or law, or is due to hardship, insolvency, or circumstances that tend appreciably toward moral justification."

In the instant case the trial court found that plaintiff was guilty of a wilful breach. The facts are undisputed. The Restatement of Contracts, comment e, supra, reflects the general rule that a person who defaults because of lack of sufficient financing is held not to commit a wilful breach. As the Restatement indicates, this is readily distinguishable from situations in which a party makes a "bad bargain" and simply abandons the contract. Cf. Cady v. Bush, supra. However, in view of our holding on the burden of proof issue, we need not pass further on this point.