William M. WOLFE, Plaintiff-Appellant,

v.

Helen F. MANLOWE, Executrix of the Estate of John B. Manlowe, Deceased, Defendant-Appellee.

No. 71–1621.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1972.

Decided July 12, 1972.

Martin A. Cannon, Omaha, Neb., for plaintiff-appellant.

George A. Bangs, Rapid City, S. D., for defendant-appellee.

Before VOGEL, LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

William Wolfe brought this diversity action against John Manlowe, seeking to recover a commission under an option contract. Upon defendant's death prior to trial, his executrix became the defendant by substitution. The trial court, Judge Denney, directed a verdict against plaintiff Wolfe, and he appeals. We affirm.

In early 1968, John Manlowe owned 750,000 shares of stock in United-Buckingham Freight Lines, Inc., a trucking company with headquarters in Omaha, Nebraska. Because of concern over losses suffered by the company, Manlowe decided to sell his stock, and he advised Wolfe of his intention. On May 23, 1968, Manlowe and Wolfe entered into an option agreement, as follows:

### OPTION
### May 23, 1968

For $1.00 and other good and valuable considerations the receipt of which is hereby acknowledged, I hereby grant to Mr. William M. Wolfe, a 60-day exclusive option to sell my stock of 750,-000 shares approximately, or to purchase it himself or by his nominee for a price of $12.00 per share. Total shares outstanding is 1,250,000 shares approximately. Should Wolfe sell the Company to others I agree to pay him a commission of 5%. The stock above referred to is stock of United-Buckingham Freight Lines, Inc. and its domestic and foreign subsidiaries.

/s/ John Manlowe

During the next sixty days, Wolfe conducted a prospecting campaign to find a buyer for Manlowe's stock. In early July 1968, Wolfe advised Manlowe that he had found a buyer, Yellow Transit, Inc. (Yellow). From July 17th to July 19th, Wolfe and Manlowe attended three conferences with representatives of Yellow. On July 20th, Wolfe sent the following message to Manlowe by telegram:

I have in my hands the form of contract prepared by the attorneys for Yellow Transit *as my nominee* under the exclusive option provided me by you under date of May 23, 1968. Copies are now available to you and your attorneys. This contract is subject to such modifications in for me [sic] by

your counsel as may be required by you and the law and regulations of the federal government concerning the sale of control of a transportation company involved in interstate commerce. The substance of the contract meets the objective of the exclusive option and the understandings you and I have had in conference with the officers and representatives of Yellow Transit. Yellow has advised me that it has completed arrangements for the money required and that it is prepared to execute such an agreement at a time convenient to you. * * * [emphasis added]

Wolfe did not send a copy of the proposed contract to Manlowe. On July 23, 1968, Cecil Johnson, a member of the board of directors at Yellow, sent the following letter to Manlowe:

Dear Mr. Manlowe:

Confirming the telephone conversation with you this morning, I have passed on to Yellow Transit the substance of our talk relative to the negotiations pending for acquisition by Yellow Transit Company of the approximate 750,000 shares you own or control of United Buckingham Freight Lines as referred to in the Option Agreement given under date of May 23, 1968 to William M. Wolfe. Representatives of Yellow Transit are awaiting word from you as to the time they should come to Spokane, or some point convenient to you, to continue the discussions which hopefully will result in the acquisition by Yellow Transit Company of the above-stated 750,000 shares. It is my understanding from your promise this morning that you will communicate the time and place to myself, or you will call either Mr. Don McMorris or Kenneth Midgley, Esq., direct in Kansas City, and that this will be as soon as possible following the completion of the trial part of the lawsuit in which you are now involved. You can reach Don McMorris through Yellow Transit in Kansas City—his telephone Number is 363-3344, and

Ken Midgley's telephone number is 842-9692 (area code for Kansas City is 816).

Further, it is my understanding you will not enter into negotiations with any other party until you have had the further discussions with Yellow Transit representatives as contemplated above.

Mr. Manlowe, as I view the current situation from my vantage point it should be possible without extended further negotiations for you to complete the transaction for the sale of your stock. In my remote position concerning these matters, I want you to know I have enjoyed my very limited part in the dealings up to date.

Yours very truly,

Cecil A. Johnson
b/c Don McMorris
    Ken Midgley
    Wm. M. Wolfe

On July 31, 1968, Manlowe, through his attorney, responded to Johnson as follows:

Re: John Manlowe

Dear Mr. Johnson:

Your letter of July 23, 1968 addressed to Mr. Manlowe has been referred to us for reply. In order to avoid any further misunderstanding on the subject, please be advised as follows:

(1) The instrument dated May 23, 1968 executed by Mr. Manlowe and entitled "Option", if it had any validity originally, has expired by its own terms and there are no legal rights, duties or obligations in existence as a result thereof.

(2) The telegram of July 20, 1968 from William M. Wolfe to John Manlowe was not and did not purport to be an exercise of the alleged option in accordance with its terms and Mr. Wolfe was so advised by telegram from John Manlowe dated July 20, 1968.

(3) Mr. William M. Wolfe has no authority to purchase nor to offer to any other person, firm or corporation,

the stock of John Manlowe in United-Buckingham Freight Lines, Inc.

(4) Mr. William M. Wolfe has no authority to engage in any negotiations with any person, firm or corporation in which he may purport to act on behalf of United-Buckingham Freight Lines, Inc. or any of its officers, directors or controlling stockholders.

(5) If Mr. Manlowe engages in future negotiations with Yellow Transit with respect to the stock which he may own or control in United-Buckingham Freight Lines, Inc. and if such negotiations should result in some agreement or contract, Mr. Manlowe will not recognize any obligation to pay Mr. William M. Wolfe any commission or sum of money whatsoever by reason of or related to the alleged option of May 23, 1968.

(6) If Mr. Manlowe should, in the future, negotiate with Yellow Transit concerning any consolidation, merger or corporate combination involving United-Buckingham Freight Lines, Inc. and if such negotiation should result in a contract or other arrangement, Mr. Manlowe will not recognize any obligation to pay any commission or other sum of money to William M. Wolfe by reason of or related to the purported option of May 23, 1968.

Yours very truly,

BANGS, McCULLEN, BUTLER & FOYE
By Geo. A. Bangs
Attorneys for John Manlowe

Subsequently, Wolfe brought this action, alleging that he was entitled to the commission specified in the option agreement because he had produced a ready, willing, and able purchaser for the stock.

In sustaining defendant's motion for a directed verdict, the district court stressed that, in the July 20, 1968 telegram, Wolfe had characterized Yellow as his nominee. The court ruled that under the terms of the option agreement, Wolfe was not entitled to a commission because he had designated Yellow as his nominee to purchaase the stock. The court said:

> [M]r. Wolfe * * * was not entitled to a commission if he purchased the stock himself or through a nominee. * * * The telegram to Mr. Manlowe from Mr. Wolfe * * * was an exercise of the option with Yellow as the nominee of Mr. Wolfe. Thus, the prima-facie case, if proven at all upon that basis, does not constitute a case whereunder such facts exist as would entitle Mr. Wolfe to a commission under the option contract. [Tr. 230–31]

On this appeal, Wolfe contends that the trial court erred in making this ruling because the evidence could justify a jury determination that Wolfe was acting as an agent for Manlowe in the transaction with Yellow, despite the reference to Yellow as a nominee. Appellee, in support of the judgment of dismissal, argues that, even assuming an agency relationship, Wolfe would not be entitled to a commission because the record contains no evidence showing Yellow to be a ready, willing, and able purchaser of the stock under the terms set forth in the option agreement. We agree that Wolfe failed to prove that Yellow was a ready, willing, and able purchaser. Since we rest our affirmance on this ground, we need not consider whether the trial court was correct in ruling that Wolfe was not acting as an agent for Manlowe in the transaction with Yellow.[1]

Wolfe argues that the following statements and actions of participants in the proposed transaction constitute sufficient proof that Yellow was a ready, willing, and able purchaser: 1) the statements by Wolfe in the July 20, 1968,

---

[1]. Although the district court did not decide whether Yellow was a ready, willing, and able purchaser, we should affirm the decision of the district court if a proper ground appears in the record. *See, e. g.,* Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); Zirinsky v. Sheehan, 413 F.2d 481, 484 n. 5 (8th Cir. 1969), cert. denied, 396 U.S. 1059, 90 S.Ct. 754, 24 L.Ed.2d 753 (1970).

telegram to Manlowe; 2) the statements by Cecil Johnson in the July 23, 1968 letter to Manlowe; 3) a statement by the vice-president of Yellow that Yellow was "ready to go and get our T.A.," referring to temporary authority from the Interstate Commerce Commission, permitting Yellow to manage United-Buckingham Freight Lines pending the acquisition; 4) a statement by Manlowe that "Yellow was hurrying. They [Yellow] wanted to get it done before the option expired."; and 5) Manlowe's action in dictating an equipment list to Wolfe. We do not accept this argument. None of the above statements and actions establish that Yellow was ready, willing, and able to purchase Manlowe's stock under the terms set forth in the option agreement.

The July 20, 1968, telegram from Wolfe to Manlowe contains a statement that attorneys for Yellow had drafted a proposed contract which conformed, in substance, to the terms of the option agreement. To be sure, this statement indicates that negotiations had reached the point where an agreement was possible. But the statement, standing alone, does not establish that Yellow was ready, willing, and able to purchase 750,000 shares of Manlowe's stock at the specified price of $12 per share. In order to establish that fact, proof of the terms of the proposed contract was necessary. Appellant did not introduce the proposed contract as evidence or otherwise prove its terms.

Although appellant's brief refers to the July 23, 1968, letter, quoted above, from Cecil Johnson to Manlowe, we find no indication in the record that appellant offered this letter as evidence in the trial. Even assuming that the letter was offered and received, it adds little to appellant's case since it indicates only that the parties had engaged in negotiations and that Johnson was hopeful that an agreement would be reached.

The statement by the vice-president of Yellow that his company was ready to go to the Interstate Commerce Commission for temporary authority to operate United-Buckingham Freight Lines does not indicate that Yellow was willing to comply with the terms of the option agreement.

Nor does the statement by Manlowe that Yellow was hurrying to complete the transaction before the option expired indicate the existence of any agreement. This statement does not show whether Yellow would respond with an acceptance or with a counter-offer.

Finally, we can attach little significance to Manlowe's action in dictating an equipment list to Wolfe as proof that Yellow was willing to comply with the terms of the option agreement.

Given this record, we find no basis for submitting the case to a jury.

Affirmed.